# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **Colby Hooper,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **CASE NO.:** |
| | ) **2:19-cv-01601-HNJ** |
| | ) |
| **Midland Funding, LLC;** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY AND MOTION FOR SANCTIONS

The gravamen of Plaintiff Colby Hooper's Complaint is that Defendants Midland Funding, LLC ("Midland Funding") and Midland Credit Management, Inc. ("MCM") (collectively, "Midland") allegedly acted improperly in a small claims lawsuit filed against him. Specifically, Hooper alleges that Midland filed the lawsuit without the intent to prove its claims, and subsequently obtained a default judgment and garnished his wages even though he (purportedly) was never served. Yet, Hooper's current motion to compel discovery and for sanctions does not seek discovery of any facts related to the circumstances of Midland's lawsuit against him—or any facts related to him at all. Instead, Hooper asks this Court to compel testimony about other complaints against Midland (regardless of the theory or outcome), Midland's lawsuits against other debtors, and Midland's litigation strategy in other cases. Further still, Hooper asks the Court to sanction Midland for

its supposed "failure" to prepare its recently deposed corporate representative to testify about those same irrelevant topics.[1]

Hooper's motion misses the mark, and this Court should deny it for at least two straightforward reasons. First, the topics on which Hooper seeks to compel testimony are wholly irrelevant and immaterial to the case at bar;[2] thus, the Court should not compel additional testimony. Second, Midland should not be sanctioned because it ***made clear one week before the deposition*** (and two days after Hooper's deposition notice) that it objected to those topics and would not produce a witness. Indeed, if Hooper's counsel was concerned with those objections and refusals, he should have engaged in a meaningful meet-and-confer process.[3] He did not. Instead, he chose to proceed with the deposition knowing the topics on which Midland was voluntarily making a witness available. In further support of this response, Midland states as follows:

**Relevant Procedural History**

1.     Hooper served his Amended Notice to Take Deposition of 30(b)(6) Corporate Representative of Midland Funding, LLC and Midland Credit

---

[1] *See* Doc. 28; *see also* Doc. 28-1 at pp. 3-5, ¶¶ 10, 12-16, 18.

[2] *See* Doc. 28-1 at pp. 3-5, ¶¶ 10, 12-16, 18.

[3] *See* Doc. 28-2 at pp. 7-13, ¶¶ 10, 12-16, 18; Ex. 1 at pp. 6-12, ¶¶ 10, 12-16, 18.  (A copy of MCM's responses and objections to Hooper's amended deposition notice is attached to this response in opposition as Exhibit 1.)

Management, Inc. (the "amended deposition notice") on October 28, 2020.[4] Therein, Hooper noticed the deposition of Midland to take place on November 6, 2020 and further propounded eighteen requested deposition topics.[5]

2.  Just two days after Hooper served his amended deposition notice, Midland Funding and MCM served their respective responses and objections on October 30, 2020.[6]

3.  More specifically, Midland agreed to make available a corporate witness to testify about eleven of Hooper's eighteen propounded deposition topics.[7] In fact, Midland *expressly* denoted that it would "**designate a witness or witnesses to testify about**" specified matters for each of those eleven topics (*i.e.*, topic nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 11, and 17).[8]

4.  By contrast, Midland did not agree to "designate a witness or witnesses to testify about" the remaining seven deposition topics at issue in Hooper's motion (*i.e.*, topic nos. 10, 12, 13, 14, 15, 16, and 18). Rather, Midland served objections—and *only* objections—to each of those seven topics.[9]

---

[4] *See* Doc. 28 at p. 2, fn.1.

[5] *See* Doc. 28-1.

[6] *See* Doc. 28-2; Ex. 1.

[7] *See* Doc. 28-2 at pp. 4-8, 12, ¶¶ 1-9, 11, 17; Ex. 1 at pp. 3-7, 10-11, ¶¶ 1-9, 11, 17.

[8] Ex. 1 at pp. 3-7, 10-11, ¶¶ 1-9, 11, 17 (emphasis in original); *see* Doc. 28-2 at pp. 4-8, 12, ¶¶ 1-9, 11, 17.

[9] *See* Ex. 1 at pp. 6-12, ¶¶ 10, 12-16, 18; *see also* Doc. 28-2 at pp. 7-13, ¶¶ 10, 12-16, 18.

5.      As denoted in Midland Funding's and MCM's respective written objections (and as discussed further below), Midland objected to Hooper's topic nos. 10, 12-16, and 18 as being wholly irrelevant and immaterial to the case at bar,[10] which concerns a single underlying small claims court collection lawsuit filed by Midland Funding against Hooper—and *only* Hooper.

6.      Hooper's counsel did not meet-and-confer with Midland's counsel to discuss Midland's objections, and he did not seek the Court's involvement or otherwise take any material action in response to Midland's unambiguous objections to the seven deposition topics at issue—rather, Hooper's counsel simply proceeded with deposing Midland's corporate representative on November 6, 2020.  Hooper filed his subject motion three days later on November 9, 2020.[11]

## Argument

Hooper's motion to compel and for sanctions is legally deficient and procedurally flawed.  The seven deposition topics on which Hooper bases his motion—*i.e.*, topic nos. 10, 12-16, and 18—are textbook "fishing expeditions" containing no relevance to the claims in this lawsuit.  As such, Midland appropriately and unambiguously objected to producing a corporate deponent to testify about those topics.  And not only were Midland's objections to those seven topics well-founded,

---

[10] *See* Doc. 28-2 at pp. 7-13, ¶¶ 10, 12-16, 18; Ex. 1 at pp. 6-12, ¶¶ 10, 12-16, 18.

[11] *See* Doc. 28.

4

but Midland also served its objections on Hooper in near immediate fashion. Thus, the ball was in Hooper's court to meet-and-confer with Midland prior to the deposition if he had an issue with Midland's objections, but he failed to do so. Accordingly, Hooper's motion to compel and for sanctions should be denied.

**I.     Midland appropriately objected to producing a corporate witness to testify about Hooper's irrelevant and unreasonable deposition topics.**

The case at bar concerns—and solely concerns—an underlying debt collection lawsuit filed by Midland Funding against Hooper in Alabama small claims court.[12] Indeed, Hooper's Complaint asserts that Midland violated the Fair Debt Collection Practices Act (the "FDCPA"), and likewise includes various state law claims against Midland, based on the allegations that: 1) Midland did not intend to prove its state court collection lawsuit claims against him; and 2) Midland obtained an "improper" judgment and thereafter instituted an unlawful garnishment proceeding against him in that collection action.[13]

Nonetheless, in the seven deposition topics at issue, Hooper sought testimony from Midland about matters completely beyond the subjects of either his sued-upon account or what happened in the underlying collection action.[14] More specifically,

---

[12] *See, e.g.*, Doc. 1; *see also, e.g.*, Doc. 18 at p. 5.
[13] *Id.*
[14] *See* Doc. 28-1 at pp. 3-5, ¶¶ 10, 12-16, 18.

5

Hooper propounded the following seven deposition topics at issue, none of which pertains to what actually took place relative to Hooper:

- "The history, specific details, and resolution of any formal and informal consumer-initiated complaints, Better Business Bureau Complaints, lawsuits, regulatory actions, claims, litigations, mediations, arbitrations, Commerce department actions, or other actions, legal or otherwise, connected to or arising out of [Midland]'s consumer debt collection activities[;]

- "The number of state court lawsuits filed by Midland against consumers for debt collection purposes in the State of Alabama between May 2016 and May 2017[;]

- "The number of times a live witness was brought to any trial in any state court trial in Alabama between July 2018 and July 2019[;]

- "The number of times any state court in the State of Alabama found in favor of Midland after a trial involving debt collection[;]

- "The number of trials involving Midland in the courts of the State of Alabama between July 2018 and July 2019[;]

- "The number of default judgments entered in favor of Midland and against consumers in the State of Alabama between 7/3/2016 and 7/3/2017[; and]

- "The nature and existence of any consent decree or regulatory order from the Consumer Finance Protection Bureau or any state that enjoins or prohibits Midland from using private process servers to serve complaints or that concerns any requirement that Midland bring a witness from Midland to trial or that concerns the nature and type of documents required of Midland in order to initiate, maintain or try any action against consumers for debt collection purposes."[15]

---

[15] Doc. 28-1 at pp. 3-5, ¶¶ 10, 12-16, 18.

6

In turn, Midland flatly objected to each of these seven deposition topics on grounds of irrelevance, immateriality, over-breadth, undue burden, unreasonableness, public availability, and/or conflict with Federal Rule of Evidence 404.[16]

Midland's objections are well-founded and otherwise proper as a matter of law.  Issues regarding lawsuits, complaints, or matters concerning individuals other than Hooper are not relevant to his FDCPA and related state law claims in this action. Simply stated, this "Court should consider [Midland]'s [alleged] noncompliance as to . . . [Hooper] only, and not to others who may have been subject to [Midland]'s [alleged] noncompliance."  *Powell v. Computer Credit, Inc.*, 975 F.Supp. 1034, 1039 (S.D. Ohio 1997).  *See Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1000-01 (11th Cir. 2020) (holding that plaintiff-consumers lacked Article III standing to maintain their FDCPA claims against defendant-debt collector based on debt collection letters that may have been misleading to *other consumers* but did not mislead *plaintiffs themselves*).

In regard to his FDCPA claim, and as supposed support of his argument that he should be able to force Midland's corporate deponent to testify about matters and issues unrelated to the case at bar, Hooper first cites to section 1692k(b)(1) of the FDCPA,[17] which provides that "[i]n determining the amount of liability in any action

---

[16] *See* Doc. 28-2 at pp. 7-13, ¶¶ 10, 12-16, 18; Ex. 1 at pp. 6-12, ¶¶ 10, 12-16, 18.

[17] *See* Doc. 28 at p. 5, ¶ 10.

7

under [15 U.S.C. § 1692k](a), the court shall consider, among other relevant factors . . . the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional[.]" 15 U.S.C. § 1692k(b)(1). However, Hooper's argument falls flat, as an alleged "'frequency and persistence of noncompliance' does not pertain to actions taken by a debt collector **in other cases**[.]" *Dewey v. Assocs. Collectors, Inc.*, 927 F.Supp. 1172, 1175 (W.D. Wis. 1996) (emphasis added). *See, e.g.*, *Grubbs v. Andrews & Cox, P.C.*, No. 1:13-cv-1936-WTL-MJD, 2015 WL 5613325, *3 (S.D. Ind. Sept. 22, 2015) (**holding that section 1692k(b)(1) "pertains to [plaintiff] himself and not all consumers"**) (emphasis added).[18]

Hooper relatedly posits that the deposition topics at issue are proper because he "must . . . counter [Midland]'s bona fide error defense."[19] Again, though, his contention is deflated by the law. *See, e.g.*, *Cusumano*, 1998 WL 67833 at *3 ("Finally, the Magistrate Judge determined that the evidence regarding litigation and administrative actions against [the defendant-debt collector] for its collection

---

[18] *See also, e.g.*, *Donnelly v. NCO Fin. Sys., Inc.*, 263 F.R.D. 500, 506 (N.D. Ill. 2009) (finding "that '[t]here is nothing in the clear language of the FDCPA which suggests that—in an individual action, as opposed to a class action—a court looks to the debt collector's practices regarding persons other than the plaintiff in determining the 'frequency and persistence of noncompliance'") (quoting *Cusumano v. NRB, Inc.*, No. 96 C 6876, 1998 WL 673833, *2 (N.D. Ill. Sept. 23, 1998)) (bracketed text supplied by court); *Richard v. Oak Tree Group, Inc.*, No. 1:06-cv-362, 2008 WL 5060319, *8-9 (W.D. Mich. Nov. 21, 2008) (holding that **the "frequency and persistence of non-compliance" does not include a debt collector's action with respect to non-parties**) (emphasis added).

[19] Doc. 28 at p. 5, ¶ 10.

activities was irrelevant to rebut [the defendant]'s expected bona fide error defense. *See* 15 U.S.C. § 1692k(c). Again, the [plaintiffs] do not persuasively explain how [the defendant]'s actions with respect to others would tend to prove whether [the defendant] did or did not make a bona fide error in its actions **with respect to the [plaintiffs]**.") (upholding denials of plaintiffs' motions to compel discovery) (internal citation supplied by court) (emphasis added).

In turn, federal courts from across the nation have denied FDCPA plaintiff-debtors' motions to compel discovery relating to defendant-debt collectors' alleged conduct regarding other debtors and/or lawsuits. *See, e.g.*, *Walters v. Perdue, Brandon, Fielder, Collins & Mott, LLP*, No. A-17-cv-1020-LY, 2018 WL 3433282, *2 (W.D. Tex. July 16, 2018) (denying plaintiff's motion to compel the production of information regarding **other debtors as an impermissible "fishing expedition"**) (emphasis added); *Nicander v. Hecker*, No. C07-05838 JF (HRL), 2009 WL 5084087, *2 (N.D. Cal. Dec. 21, 2009) (denying plaintiff's motion to compel defendant-debt collector to respond to discovery requests regarding defendant's **"collection letter practices as to other debtors"**) (emphasis added); *Cusumano*, 1998 WL 673833 at *2-3 (denying plaintiffs' motion to compel production of information about **other litigation concerning collection practices**).[20]

---

[20] *See also, e.g.*, *Peters v. Roberts Markel, PC*, No. 11-00331 SOM/KSC, 2012 WL 2190563, *10 (D. Hawai'i June 13, 2012) ("**No matter what, relief under the FDCPA is available only to a person who sustains damage through a debt collector's violation of the**

9

Turning next to his state law claims, Hooper similarly claims that Midland should produce a witness to testify about deposition topic nos. 10, 12-16, and 18 for two reasons: 1) his "malicious prosecution and abuse of process claims also require proof of malice and willfulness[;]"[21] and 2) his supposed "entitlement to punitive damages depends on a showing of reprehensibility."[22] As an initial matter, Hooper tellingly offers no legal authority whatsoever in support of his argument regarding "proof of malice and willfulness." Going further, his motion seeks the production of inadmissible character evidence—*i.e.*, because Hooper knows he cannot demonstrate that Midland acted maliciously or otherwise wrongfully *towards himself*, he now seeks to pan for "evidence" that Midland supposedly acted maliciously or otherwise wrongfully *towards others*. That is impermissible as a matter of evidentiary law. *See* FED. R. EVID. 404 cmt. ("The Rule has been amended to clarify that in a civil case evidence of a person's character is never admissible to prove that the person acted in conformity with the character trait.") (citing cases); *see also* ALA. R. EVID. 404 cmt. (citing cases).

The case of *Mobile White Autocar Co., Inc. v. Puckett*, 394 So. 2d 39 (Ala. Civ. App. 1981) is instructive. There, the plaintiff-purchaser sued the defendant-

---

**FDCPA 'with respect to' that very person.** 15 U.S.C. § 1692k(a). When a debt collector violates the FDCPA with respect to someone else, the FDCPA does not provide for claims by others.") (internal citation supplied by court) (emphasis added).

[21] Doc. 28 at p. 5, ¶ 10.

[22] *Id.*

truck dealer, claiming that the defendant made "false representations in the sale of a tractor-truck in 1975 to the plaintiff, the negligent repair of the truck[,] and the breach of an implied warranty as to repairs made." 394 So. 2d at 39. "Prior to offering the deposition of their former used truck manager, the defendant made an oral motion *in limine* as to some five pages of the cross-examination portion of the deposition pertaining to the salesman's prior acts of misrepresentation in the sale of trucks"—including in regard to prior "misrepresentation lawsuits." *Id.* at 39-40. The trial court overruled the defendant's motion, and a judgment was entered against the defendant following the trial. *See id.* at 40.

On review, the Alabama Court of Civil Appeals initially decreed that "the evidence [of the defendant's prior misrepresentations and prior misrepresentation lawsuits] could not be introduced to show fraud, motive, scheme[,] or intent[.]" *Puckett*, 394 So. 2d at 40. The appellate court further ruled that the evidence of the defendant's prior conduct and prior litigation would not be admissible under any circumstance, finding that **"[t]he [deposition] question which elicited the irresponsive answer was *itself objectionable*, for it is immaterial in this case as to whether the witness had been previously involved in other misrepresentation cases."** *Id.* at 41 (emphases added). The Court of Civil Appeals thus held "that the trial court should have granted the defendant's motion *in limine* thereby sustaining their objection to the presentation of such evidence to the jury[,]" reversing and

11

remanding the lower court's decision. *Id.* As such, not only does Hooper here fail to support his "proof of malice and willfulness" argument with any authority, his argument actually runs afoul of settled law. *See, e.g.*, *Puckett*, 394 So. 2d at 40-41; FED. R. EVID. 404(b); *see also* ALA. R. EVID. 404(b).

Hooper's related "state law claims" argument based on punitive damages fails, as well. In support of this argument, Hooper cites a single case: *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003).[23] However, *Campbell* actually cuts *against* Hooper's position, in that the United States Supreme Court there reversed and remanded the underlying punitive damages award in large part because that award wrongfully and unlawfully "condemned [the defendant] for its nationwide policies **rather than for the conduct directed toward the [plaintiffs]**." 538 U.S. at 420 (emphasis added). In other words, *Campbell* does not open the door to irrelevant discovery regarding a defendant's conduct involving non-parties simply because a plaintiff is seeking an award of punitive damages—quite the opposite, *Campbell* cautions against opening that door.

Midland's objections to Hooper's deposition topic nos. 10, 12-16, and 18 are in accord with the law, and Hooper is not entitled to conduct a "fishing expedition" on matters completely devoid of relevance to what is at issue in this case. The Court should deny Hooper's motion to compel additional deposition testimony.

---

[23] Doc. 28 at p. 5, ¶ 10.

## II. Midland followed proper procedure by timely objecting to those certain irrelevant deposition topics proposed by Hooper.

As noted above, Midland Funding and MCM promptly served their respective responses and objections to Hooper's amended deposition notice; therein, Midland agreed to put-up a corporate deponent to testify about Hooper's deposition topic nos. 1-9, 11, and 17—but flatly and unequivocally objected to doing so in regard to topic nos. 10, 12-16, and 18.[24] In response, Hooper did not engage in any sort of meaningful "meet-and-confer" session with Midland.[25] (Rather, he simply moved forward with deposing Midland's corporate representative on November 6, 2020.) In sum, Midland followed the "proper means" of applicable procedure in responding to—and objecting to—Hooper's amended deposition notice:

> When a party objects to the scope of a 30(b)(6) deposition notice, courts have found that the proper means for raising the dispute is by timely serving those objections upon the opposing party in advance of the deposition, not by filing a motion for protective order seeking anticipatory review before the deposition. *See King v. Pratt & Whitney*, 161 F.R.D. 475 (S.D. Fla. 1995); *New World Network Ltd. v. M/V*

---

[24] *See* Doc. 28-2; Ex. 1.

[25] In fact, the only step even arguably taken by Hooper in response to receiving Midland's objections did not take place until the eve of the deposition. More specifically, at 4:26 p.m. on November 5, 2020 (*i.e.*, late afternoon on the day before the deposition of Midland's corporate representative), Hooper's counsel called the undersigned counsel for Midland to discuss the logistics of conducting the deposition via Zoom. At the tail-end of the phone conversation, Hooper's counsel added that he felt Hooper was entitled to question Midland's deponent on the deposition topics to which Midland had objected. However, Hooper's counsel did not seek a compromise as to Midland's objections or otherwise offer to more narrowly tailor any of the seven deposition topics in dispute. Instead, the parties' respective counsels both acknowledged that Hooper ultimately might seek the Court's involvement on this front—which, of course, underscores the fact that Hooper knew full well that Midland would not be producing a witness to testify as to his deposition topic nos. 10, 12-16, and 18.

13

> *Norwegian Sea*, No. 05-22916 CIV, 2007 WL 1068124, at *5 (S.D. Fla. Apr. 6, 2007). **The "better procedure" is for the corporate deponent to object to the designation and give notice to the requesting party of those objections**, so that the requesting party has the opportunity to reconsider its position, narrow the scope of the topic, or otherwise stand on its position and seek to compel additional answers, if necessary, following the deposition.

*Kaplan v. Nautilus Ins. Co.*, No. 14-cv-24453-KING/LOUIS, 2018 WL 6445886, *1 (S.D. Fla. Sept. 17, 2018) (internal citations supplied by court) (emphasis added).

Moreover, the three cases cited by Hooper as purported support for his request for the imposition of sanctions against Midland[26] are completely distinguishable from this case. In *QBE Insurance Corp. v. Jorda Enterprises*, 277 F.R.D. 676 (S.D. Fla. 2012), the court sanctioned the plaintiff for failing to provide a corporate deponent in response to the defendant's Rule 30(b)(6) deposition notice because—unlike Midland here—the plaintiff there "did not object to any of the 12 non-ESI [deposition] topics [at issue.]" 277 F.R.D. at 682. In *Sciarretta v. Lincoln National Life Insurance Co.*, 778 F.3d 1205 (11th Cir. 2015), the court sanctioned the defendant-life insurance company in order to prevent the defendant from "convert[ing] the investigation into its admitted criminal behavior into a stroke of good luck"—*i.e.*, the *Sciarretta* court had to resort to sanctioning the defendant in order to ward-off "the long-disallowed use of the Fifth Amendment as both a sword and a shield." 778 F.3d at 1213. Obviously, such issues of criminality and a

---

[26] *See* Doc. 28 at p. 6, ¶¶ 13-14.

manipulation of the Fifth Amendment are not present in the case at bar. Finally, in *Black Horse Lane Associates, L.P. v. Dow Chemical Corp.*, 228 F.3d 275 (3d Cir. 2000), the court sanctioned the appellants because, among other reasons, their designated corporate deponent—despite being a licensed attorney for over thirty years—claimed to have no recollection of seeing or signing an agreement that he indisputably had signed and further "claimed that he was unaware that he was appellants' designated Rule 30(b)(6) representative, did not know what the phrase 'Rule 30(b)(6) representative' meant, and was not familiar with Rule 30(b)(6) or what it required him to do[,] . . . and later stated clearly that he had not bothered to read [the notice of his deposition] at all." 228 F.3d at 305. Unlike the deponent in *Black Horse Lane Associates, L.P.*, Midland's corporate representative was forthright and otherwise exhibited the utmost professionalism at his deposition, and Hooper has not asserted—and cannot assert—anything to the contrary.

Given that Midland's actions were lockstep with proper procedure in terms of responding and objecting to a Rule 30(b)(6) notice of deposition, it is axiomatic that Hooper's request for the imposition of sanctions against Midland has no merit. Thus, the Court should deny Hooper's request for the imposition of sanctions.

## Conclusion

Pursuant to the above, Midland respectfully requests that this Court enter an order denying Hooper's motion to compel discovery and motion for sanctions.

Date: November 23, 2020

                                        */s/ Thomas R. DeBray, Jr.*
                                        One of the Attorneys for Defendants

**OF COUNSEL:**

Jason B. Tompkins
Thomas R. DeBray, Jr.
Balch & Bingham LLP
Post Office Box 306
Birmingham, Alabama 35201-0306

## CERTIFICATE OF SERVICE

     I hereby certify that the foregoing and attached have been filed on this the 23rd day of November, 2020, via CM/ECF, which will electronically notify the following counsel of record:

John C. Hubbard
JOHN C. HUBBARD, LLC
Post Office Box 953
Birmingham, Alabama 35201

W. Whitney Seals
COCHURN & SEALS, LLC
Post Office Box 10448
Birmingham, Alabama 35202-0448

                                        */s/ Thomas R. DeBray, Jr.*
                                        Of Counsel