

FILED
2020 Dec-14  PM 03:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| Colby Hooper, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | **CASE NO.:** |
| ) | **2:19-cv-01601-JEO** |
| Midland Funding, LLC; Midland ) | |
| Credit Management, Inc., ) | |
| ) | |
|     Defendants. ) | |

## BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON BEHALF OF DEFENDANTS MIDLAND FUNDING LLC AND MIDLAND CREDIT MANAGEMENT, INC.

Jason B. Tompkins
Thomas R. DeBray, Jr.
Balch & Bingham LLP
1901 Sixth Avenue North, Suite 1500
Post Office Box 306
Birmingham, Alabama 35201-0306

December 14, 2020

# **Table of Contents**

Table of Authorities ................................................................................. ii

Introduction ....................................................................................... 1

Statement of Undisputed Relevant Material Facts ................................... 1

Argument and Citations to Authority ..................................................... 14

I.      Hooper's conclusory "no intent or attempt to prove" allegations fail to carry the day for his FDCPA count. ............................................ 15

    A.      Hooper's own deposition testimony flatly contradicts his "no intent or attempt to prove" theory. ................................................. 15

    B.      A debt collector does not violate the FDCPA by filing a state court collection case that it does not intend or attempt to prove at trial. ..... 16

    C.      The *Hamilton* case is dispositive. ..................................... 17

    D.      The FDCPA does not preclude a debt collector from filing and prosecuting a collection lawsuit in good faith. ................................. 20

II.     Hooper's conclusory allegations regarding service and the subsequent default judgment and garnishment do not save his FDCPA count. .............. 24

    A.      Hooper's own testimony torpedoes his "lack of service" argument ... 24

    B.      Hooper's "lack of service" contention misconstrues the law. ........... 25

III.    Midland is entitled to summary judgment on Hooper's state law claims. .... 27

    A.      There is no cause of action for the negligent or wanton filing or prosecution of a lawsuit. .................................................... 27

    B.      There is no evidence that Midland acted with actionable "malice." ... 28

    C.      Hooper's abuse of process claim misses the mark. ......................... 29

Conclusion ....................................................................................... 30

## **Table of Authorities**

## **CASES**

*Bandy v. Midland Funding LLC*,
   No. 12-00491-KD-C, 2013 WL 210730 (S.D. Ala. Jan. 18, 2013).....................19

*Bent v. Mackie Wolfe & Mann, P.C.*,
   No. 3:13-cv-2038, 2013 WL 4551614 (N.D. Tex. Aug. 28, 2013)....................28

*Bradford v. LVNV Funding, LLC*,
   3 F.Supp. 3d 708 (E.D. Tenn. 2014)..................................................................23

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)................................................................................... 16, 25

*ClassroomDirect.com, LLC v. Draphix, LLC*,
   314 F. App'x 169 (11th Cir. 2008) ....................................................................30

*Costa v. Nat'l Action Fin. Servs.*,
   634 F.Supp. 2d 1069 (E.D. Cal. 2007) ..............................................................24

*Crutcher v. Williams*,
   12 So. 3d 631 (Ala. 2008).................................................................................24

*Cutts v. American United Life Ins. Co.*,
   505 So. 2d 1211 (Ala. 1987)..............................................................................28

*Delisi v. Midland Funding, LLC*,
   No. 14-2125, 2015 WL 4393901 (E.D. Mo. July 16, 2015) ..............................21

*Eidson v. Olin Corp.*,
   527 So. 2d 1283 (Ala. 1988)..............................................................................29

*Ex parte Gen. Motors Corp.*,
   769 So. 2d 903 (Ala. 1999)................................................................................25

*Ex parte Miller, Taylor, Snider & Odom, LLC*,
   942 So. 2d 334 (Ala. 2006)................................................................................28

*Garcia v. Portfolio Recovery Assocs., LLC*,
   No. 1:15-cv-3685 (NLH/JS), 2018 WL 3218665 (D.N.J. June 29, 2018) .........17

*Hamilton v. Midland Funding, LLC*,
   No. 2:14-cv-02008-AKK (N.D. Ala. Oct. 20, 2014)................................. passim

*Heintz v. Jenkins*,
   514 U.S. 291 (1995)...........................................................................................21

*Hempel-Dubois v. Portfolio Recovery Assocs., LLC*,
   No. 11-cv-09-JD, 2011 WL 3627294 (D.N.H. Aug. 17, 2011)..........................30

*Hollander v. Nichols*,
   19 So. 3d 184 (Ala. 2009)...................................................................................30

*Hooper v. Midland Funding, LLC*,
   No. 2:14-cv-02008-AKK, 2017 WL 394839 (N.D. Ala. Jan. 30, 2017)..... 10, 17

*Kozaczek v. New Hampshire Higher Educ. Assistance Found.*,
   No. 1:12-cv-00055, 2014 WL 3640779 (D. Vermont July 21, 2014)...............28

*Krawczyk v. Centurion Capital Corp.*,
   No. 06-C-6273, 2009 WL 395458 (N.D. Ill. Feb. 18, 2009)....................... 21, 23

*Latham v. City of Birmingham*,
   No. 2:18-cv-01326-RDP, 2020 WL 3640002 (N.D. Ala. July 6, 2020) ..... 16, 25

*Lena v. Cach, LLC*,
   No. 14 C 01805, 2015 WL 4692443 (N.D. Ill. Aug. 6, 2015) ................... 17, 23

*Mafeti v. Activus*,
   No. DKC 2008-0540, 2009 WL 2507423 (D. Md. Aug. 14, 2009) ..................28

*Milkjovic v. Shafritz and Dinkin, P.A.*,
   791 F.3d 1291 (11th Cir. 2015) .........................................................................18

*Owusumensah v. Cavalry Portfolio Servs., LLC*,
   No. 14-C-3640, 2014 WL 6461704 (N.D. Ill. Nov. 18, 2014)..........................21

*Pantoja v. Portfolio Recovery Assoc., LLC*,
    No. 13C7654, 2015 WL 1396609 (N.D. Ill. Mar. 24, 2015)...........................21

*Ravenel v. Burnett*,
   5 So. 3d 592 (Ala. Civ. App. 2008) ...................................................................29

*Reynolds v. McEwen*,
   416 So. 2d 702 (Ala. 1982).................................................................................29

*Richardson v. Midland Funding, LLC*,
   No. 13-1356, 2013 WL 6719110 (D. Md. Dec. 18, 2013), *aff'd*, 583 Fed.
   App'x 124 (4th Cir. 2014) .................................................................................23

*Rodrigo v. Barclays Bank Delaware*,
   No. 16-cv-808-JAH (JMA), 2017 WL 1155373 (S.D. Cal. Mar. 27, 2017) .... 25,
   26, 27

*St. John v. Cach, LLC*,
   822 F.3d 388 (7th Cir. 2016) ............................................................... 17, 21, 23

*Stewart v. Bureaus Inv. Grp., LLC*,
   No. 3:10-CV-1019-WKW, 2015 WL 7572312 (M.D. Ala. Nov. 24, 2015)......28

*Sullivan v. Davidson Trucking, Inc.*,
   No. 2:17-cv-805-RDP, 2020 WL 3545541 (N.D. Ala. June 30, 2020)....... 16, 25

*Willis v. Parker*,
   814 So. 2d 857 (Ala. 2001)...............................................................................30

## **STATUTES**

15 U.S.C. § 1692.............................................................................. passim

## Introduction

Plaintiff Colby Hooper claims Credit Management, Inc. ("MCM") (collectively, "Midland") violated that Defendants Midland Funding LLC ("Midland Funding") and Midland the Fair Debt Collection Practices Act (the "FDCPA") and state law by supposedly filing a debt collection lawsuit against him without intending or attempting to prove its claims, and subsequently obtaining a default judgment and garnishing his wages even though he (allegedly) was not served with Midland's lawsuit.  Hooper's theory, however, runs afoul of the law and ignores the facts of this case.  The relevant question is whether, at the time of filing the underlying complaint, motion for default judgment, and garnishment proceeding, Midland had a good faith basis for doing so—*not* what its litigation strategy may have been at any given point in the proceedings.  The undisputed evidence here shows not only that Midland had a good faith belief that Hooper owed the debt—a fact he since has admitted—but also that Midland acted in good faith throughout the underlying litigation.  Accordingly, Midland is entitled to summary judgment on all claims.

## Statement of Undisputed Relevant Material Facts

- **Hooper opened and used the Walmart credit card account.**

Hooper opened the account at issue—a Walmart credit card account issued by GE Capital Retail Bank and bearing an original account number ending in 2215[1]—

---

[1] Certain of Midland's evidentiary submissions contain confidential information and/or personal or financial identifiers.  *See, e.g.*, Ex. 2 at Attach. 4.  Pursuant to Federal Rule of Civil

1

on December 4, 2009.  *See, e.g.*, Ex. 1, Hooper Dep. 47:13-14 (Oct. 23, 2020) ("Q: But you did open the [Walmart credit card] account?  A: Yes."); *id.* at 49:8-64:21 (Hooper testifying as to his Walmart credit card account statements);[2] Ex. 2, Andrew Richmond Decl. (Dec. 11, 2020) at Attach. 3; *id.* at Attach. 4.[3]  Hooper used his Walmart credit card account to make purchases, and he made payments on the account.  *See, e.g.*, Ex. 1, Hooper Dep. 49:8-50:20 (Hooper testifying that his monthly account statements reflect purchases that he made with, and payments that he made upon, his account); *id.* at 55:4-8; *id.* at 59:8-10; Ex. 2, Richmond Decl. at Attach. 4, pp. 1-2, 4, 7-8, 15.  Hooper last made an account payment to the original

---

Procedure 5.2, the Initial Order Governing All Further Proceedings (*see* Doc. 10 at p. 3, ¶ B), and/or the Stipulated Protective Order Regarding Confidential Information (*see* Doc. 15 at p. 3, ¶ 3), non-redacted versions of these evidentiary submissions are being filed under seal.  Portions of this brief also contain confidential information, and pursuant to the Stipulated Protective Order Regarding Confidential Information, a non-redacted version of this brief is being filed under seal.

[2] The transcript of Hooper's deposition is being submitted in connection with this brief as Exhibit 1.

[3] The declaration of Andrew Richmond, MCM's Senior Manager of Performance Management, is being submitted in connection with this brief as Exhibit 2.  Midland's Field Data sheet for Hooper's Walmart credit card account is attached to Mr. Richmond's declaration as Attachment 3.  A compilation of monthly account statements for Hooper's account dated December 2011 through November 2012, which the original creditor provided to Midland, and which were marked as Defendants' Exhibit 14 to Hooper's deposition (*see* Ex. 1, Hooper Dep. 49:8-50:20), is attached to Mr. Richmond's declaration as Attachment 4.

*Cf.* Ex. 3 at pp. 1-38.  Hooper's monthly account statements dated December 2011 – November 2012, which match-up with the account statements comprising Attachment 4 to Mr. Richmond's declaration, are being submitted in connection with this brief as Exhibit 3.  *Cf. also* Ex. 4 at pp. 1-2, 4, 7-8, 12.  Four of Hooper's monthly account statements, which respectively are dated December 2011, October 2012, April 2012, and November 2012, and which respectively were marked as Defendants' Exhibits 15, 16, 17, and 18 to Hooper's deposition (*see* Ex. 1, Hooper Dep. 54:3-14; *id.* at 56:1-10; *id.* at 57:10-23; *id.* at 59:16-60:1), and which match-up with the four at-issue account statements found within Attachment 4 to Mr. Richmond's declaration, are being submitted in connection with this brief as Exhibit 4.

creditor in April 2012. *See* Ex. 1, Hooper Dep. 58:10-20; Ex. 2, Richmond Decl. at Attach. 3; *id.* at Attach. 4, p. 15.

- **Hooper did not pay the account in full, GE Capital Retail Bank charged-off the account, and Midland Funding purchased it.**

Hooper did not pay the balance of his account, and his account was charged-off in the amount of $1,519.35 in November 2012. *See* Ex. 1, Hooper Dep. 64:15-21; Ex. 2, Richmond Decl. at Attach. 3; *id.* at Attach. 4, p. 38.[4] Effective September 2013, Midland Funding purchased Hooper's account as part of a portfolio of charged-off accounts from GE Capital Retail Bank. *See* Ex. 2, Richmond Decl. at ¶ 3; *id.* at Attach. 1, p. 1;[5] *id.* at Attach. 2, p. 1.[6] Midland Funding acquired all rights, title, and interest in and to Hooper's account. *Id.*; Ex. 2, Richmond Decl. at ¶ 5. Along with other account materials (including but not limited to Hooper's monthly account statements), GE Capital Retail Bank provided the Bill of Sale and the attesting Affidavit of Sale of Account by Original Creditor to Midland in connection with Midland Funding's purchase of Hooper's account. *See* Ex. 2, Richmond Decl.

---

[4] Again, Hooper admitted that these monthly account statements—including but not limited to the November 2012 charge-off statement—concerned his Walmart credit card account at issue. *See, e.g.*, Ex. 1, Hooper Dep. 49:8-50:20; *id.* at 59:16-60:1; *id.* at 64:15-21.

[5] The Bill of Sale between GE Capital Retail Bank and Midland Funding, which concerns Midland Funding's purchase of the pool of charged-off accounts that included Hooper's account, is attached to Mr. Richmond's declaration as Attachment 1.

[6] The affidavit of GE Capital Retail Bank's Collections Operations Representative, Diane Stone, which concerns the aforementioned Bill of Sale between GE Capital Retail Bank and Midland Funding (*i.e.*, the "Affidavit of Sale of Account by Original Creditor"), is attached to Mr. Richmond's declaration as Attachment 2.

at ¶¶ 3, 6; *id.* at Attachs. 1-2, 4.  GE Capital Retail Bank also transferred specific account information about all of the purchased accounts to Midland via an electronic file.  *See* Ex. 2, Richmond Decl. at ¶ 4; *id.* at Attach. 2.  That file was loaded into Midland's systems, and the specific information from that file about Hooper's account is shown in Midland's Field Data sheet.  *See* Ex. 2, Richmond Decl. at ¶ 4.[7]

- **Hooper made two payments on the debt to Midland in 2016.**

After Midland Funding acquired Hooper's account, **Hooper made two payments on the account to Midland**—the first payment on April 30, 2016 in the amount of $59.35, and a second on May 31, 2016 in the amount of $50.00.  *See* Ex. 2, Richmond Decl. at ¶¶ 8-9; *id.* at Attach. 5.[8]  Hooper did not make any payments thereafter on the account.  *Id.*

- **In February of 2017, Midland placed Hooper's account with Moxley & Associates, LLC and provided that law firm with account documentation.**

On February 12, 2017, Midland placed Hooper's account with an outside collection law firm, Moxley & Associates, LLC ("Moxley & Associates"), to attempt to collect the balance of the debt.  *See* Ex. 2, Richmond Decl. at ¶ 10; Ex. 5,

---

[7] *See also id.* at Attach. 3 ("Data printed by [MCM] from electronic records provided by . . . GE Capital Retail Bank . . .").

[8] Midland's "Payment History" log regarding Hooper's account, which was marked as Defendants' Exhibit 21 to Hooper's deposition (*see* Ex. 1, Hooper Dep. 71:7-20), is attached to Mr. Richmond's declaration as Attachment 5.  Hooper cannot dispute making these two payments to Midland.  *See* Ex. 1, Hooper Dep. 70:23-72:19.

Richard G. Moxley, III Aff., ¶ 3 (Dec. 10, 2020).[9]  Midland provided all of Hooper's account-specific documentation to Moxley & Associates at that time—*i.e.*, Midland provided, among other materials, Hooper's account information that Midland previously received from GE Capital Retail Bank (in the form of Midland's Field Data sheet), the twelve monthly account statements for Hooper's account, and the chain of title documents to Moxley & Associates on February 12, 2017.  *See* Ex. 2, Richmond Decl. at ¶ 10; Ex. 5, Moxley Aff. at ¶ 4; *id.* at Attachs. 1-3.[10]  On or about March 30, 2017, Midland provided the affidavit of Kenneth Sell, a Legal Specialist employed by MCM, to Moxley & Associates; Mr. Sell's affidavit attests to Midland Funding's acquisition of Hooper's account from GE Capital Retail Bank.  *See* Ex. 2, Richmond Decl. at ¶ 6; *id.* at Attach. 6; Ex. 5, Moxley Aff. at ¶ 6; *id.* at Attach. 4.[11]

- **On behalf of Midland Funding, Moxley & Associates filed the underlying collection action against Hooper on May 10, 2017.**

After exhausting other collection efforts, and following a review of Hooper's account documentation that Midland had provided, Moxley & Associates determined that there existed sufficient evidentiary grounds on which to file suit on

---

[9] The affidavit of Richard G. Moxley, III, an attorney with (and the managing partner of) Moxley & Associates, is being submitted in connection with this brief as Exhibit 5.

[10] Hooper's monthly account statements are attached to Mr. Moxley's affidavit as Attachment 1, Midland's Field Data sheet is attached to Mr. Moxley's affidavit as Attachment 2, and the chain of title documentation regarding Midland's acquisition of Hooper's account from GE Capital Retail Bank is attached to Mr. Moxley's affidavit as Attachment 3.

[11] Mr. Sell's affidavit is attached to Mr. Richmond's declaration as Attachment 6 and to Mr. Moxley's affidavit as Attachment 4.

Hooper's unpaid Walmart credit card account. *See* Ex. 5, Moxley Aff. at ¶¶ 7-8. On behalf of Midland Funding, Moxley & Associates filed the underlying collection action against Hooper in the Small Claims Court of Jefferson County, Alabama, on May 10, 2017. *See* Ex. 5, Moxley Aff. at ¶ 9; *id.* at Attach. 5.[12] Moxley & Associates attached, among other documentation, the aforementioned Bill of Sale and Affidavit of Sale of Account by Original Creditor, Midland's Field Data Sheet, two of Hooper's Walmart credit card monthly account statements, and Mr. Sell's attesting affidavit to Midland Funding's complaint. *See* Ex. 5, Moxley Aff. at ¶ 9; *id.* at Attach. 5 at pp. 4, 6, 8-17, 28-29.[13]

- **An independent process server served Hooper with Midland Funding's collection lawsuit.**

Moxley & Associates retained VanSlam, Inc. ("VanSlam"), an independent and professional process service company, to serve Midland Funding's complaint on Hooper. *See* Ex. 5, Moxley Aff. at ¶ 10. On May 26, 2017, VanSlam personally served the court summons and Midland Funding's complaint upon Hooper:

---

[12] Midland Funding's underlying state court collection complaint filed against Hooper, which was marked as Defendants' Exhibit 22 to Hooper's deposition (*see* Ex. 1, Hooper Dep. 72:21-73:9), is attached to Mr. Moxley's affidavit as Attachment 5. Midland Funding's complaint identified the debt at issue as Hooper's account issued by GE Capital Retail Bank, and further sought to recover the outstanding balance of $1,410.00—*i.e.*, the charge-off balance of $1,519.35 minus Hooper's two subsequent payments totaling $109.35. *See* Ex. 5, Moxley Aff. at Attach. 5, p. 1, ¶ 3; *id.* at Attach. 5, p. 2, ¶ a. *Cf.* Ex. 1, Hooper Dep. 72:21-74:2.

[13] *Cf.* Ex. 1, Hooper Dep. 72:21-74:2.

**Vanslam, Inc.**

Service History for Case: 1919-01-SM-2017-902861



Ex. 6, Ervin A. VanSlambrouck Aff., Attach. 1 (Dec. 8, 2020);[14] *see* Ex. 7, Hannah VanSlambrouck Aff., ¶¶ 3-5 (Dec. 7, 2020);[15] *id.* at Attach. 1.[16]  In doing so, not only did Mrs. VanSlambrouck sign the Service Return form, but she also had Hooper sign for his receipt of service:



Ex. 7, Hannah VanSlambrouck Aff. at Attach. 1; *see id.* at ¶¶ 3-5.[17]

---

[14] The affidavit of Ervin A. VanSlambrouck, the founder and owner of VanSlam, is being submitted in connection with this brief as Exhibit 6.  VanSlam's 2017 "Service History" log regarding its attempts to serve Midland Funding's lawsuit on Hooper is attached to Mr. VanSlambrouck's affidavit as Attachment 1.

[15] The affidavit of Hannah VanSlambrouck is being submitted in connection with this brief as Exhibit 7.

[16] The court-stamped Service Return form regarding the service of Midland Funding's underlying lawsuit upon Hooper is attached to Mrs. VanSlambrouck's affidavit as Attachment 1. *See also* Ex. 1, Hooper Dep. 74:4-12.

[17] *Cf.* Ex. 1, Hooper Dep. 75:19-22 (**"Q: . . . [I]s that your cell phone number listed under your address there?  A: Yes."**) (emphasis added).

- **Moxley & Associates obtained a default judgment on behalf of Midland Funding and thereafter instituted a garnishment proceeding against Hooper.**

After Hooper failed to file a timely answer to Midland Funding's complaint, and in reliance upon the duly signed and filed Service Return form, Moxley & Associates filed an application for entry of default on Midland Funding's behalf on June 29, 2017.  *See* Ex. 5, Moxley Aff. at ¶¶ 11-12; *id.* at Attach. 7.[18]  Four days later, the small claims court granted default judgment in favor of Midland Funding in the amount of $1,410.00;  *See, e.g.*, Ex. 8.[19]  As a result, Moxley & Associates thereafter filed a process of garnishment against Hooper on April 10, 2019.  *See, e.g.*, Ex. 8; Ex. 5, Moxley Aff. at ¶ 13; *id.* at Attach. 9.[20]  VanSlam personally served the process of garnishment on Hooper on April 27, 2019—that service was made upon Hooper at the same address where he previously was served with the summons and complaint, and the garnishment return of service form **again bore Hooper's**

---

[18] Midland Funding's application for entry of default filed in the underlying state court collection case, which was marked as Defendants' Exhibit 24 to Hooper's deposition (*see* Ex. 1, Hooper Dep. 78:20-79:10), is attached to Mr. Moxley's affidavit as Attachment 7.

[19] The state court's order granting Midland Funding's request for the entry of a default judgment, which was marked as Defendants' Exhibit 25 to Hooper's deposition (*see* Ex. 1, Hooper Dep. 80:2-3), is being submitted in connection with the brief as Exhibit 8.

[20] Midland Funding's process of garnishment filed in the underlying state court collection case, which was marked as Defendants' Exhibit 26 to Hooper's deposition (*see* Ex. 1, Hooper Dep. 87:20-88:12), is attached to Mr. Moxley's affidavit as Attachment 9.

**signature** and cell phone number.  *See* Ex. 6, Ervin A. VanSlambrouck Aff. at Attach. 3;[21] Ex. 9.[22]

- **Hooper moved to release the garnishment and set aside the default.**

After Hooper's prior employer informed him of the garnishment proceeding sometime between April 10 and 18, 2019,[23] Hooper appeared in the underlying case for the first time via his counsel's filing of a motion to release the garnishment and set aside the default on April 18, 2019.[24]  Following a "rather informal" hearing,[25] the state court granted Hooper's motion.  *See* Ex. 10.[26]  The state court's order mentioned nothing whatsoever about whether or not Hooper had been properly served—instead, the order simply granted Hooper's motion without further commentary or explanation.  *Id.*; Ex. 5, Moxley Aff. at ¶ 16.

---

[21] VanSlam's 2019 "Service History" log regarding its attempts to serve Midland Funding's process of garnishment on Hooper is attached to Mr. VanSlambrouck's affidavit as Attachment 3.

[22] The court-stamped Return on Service form regarding the service of Midland Funding's process of garnishment upon Hooper, which was marked as Defendants' Exhibit 28 to Hooper's deposition (*see* Ex. 1, Hooper Dep. 92:7-93:16), is being submitted in connection with this brief as Exhibit 9.  *Cf.* Ex. 1, Hooper Dep. 93:8-16 ("Q: Is that your signature? A: Yes.  [. . .]  Q: . . . Do you have any reason to dispute that you signed this form?  A: I don't."); *id.* at 75:19-22.

[23] *See* Ex. 1, Hooper Dep. 106:10-110:23.

[24] *See* Doc. 18-3.

[25] Ex. 5, Moxley Aff. at ¶ 15; *see, e.g.*, Ex. 1, Hooper Dep. 197:20-198:5.

[26] The court-stamped order granting Hooper's underlying motion to set aside and release is being submitted in connection with this brief as Exhibit 10.  *See also* Doc. 18-6.

9

- **All of Hooper's garnished wages were returned to him.**

As a result of the garnishment proceeding, a total of $1,057.30 of Hooper's wages was garnished over a six-week period (*i.e.*, April 13 – May 31, 2019). *See* Ex. 1, Hooper Dep. 135:22-137:17; Ex. 11, pp. 15-17.[27]   All of those garnished wages, however, were returned or otherwise relinquished back to Hooper by July 2019. *See* Ex. 1, Hooper Dep. 120:15-121:4; *id.* at 140:1-9; Ex. 11.[28]

- **Midland relied on Moxley & Associates to determine what evidence would be needed for the collection trial.**

After the small claims court granted Hooper's motion to set aside and release, it set the collection case for trial on July 22, 2019.[29]   Midland relied on Moxley & Associates to determine if any additional evidence was needed from Midland to prevail at trial. *See* Ex. 2, Richmond Decl. at ¶ 12; Ex. 5, Moxley Aff. at ¶¶ 19-21. Midland also relied on Moxley & Associates to determine whether a "live witness" was necessary in order for Midland to prevail at the collection trial. *See, e.g.*, Ex. 12, Andrew Richmond Dep. 169:19-170:22 (Nov. 6, 2020); *id.* at 175:16-176:15; *id.*

---

[27] The garnishment paperwork subpoenaed from Hooper's prior employer, Dawson Family of Faith, which was marked as Defendants' Exhibit 31 to Hooper's deposition (*see* Ex. 1, Hooper Dep. 132:8-133:13; *id.* at 135:7-21), is being submitted in connection with this brief as Exhibit 11.

[28] *See also* Ex. 5, Moxley Aff. at ¶ 17; *Hooper*, Checks, No. SM-2017-902861.00 (Small Claims Ct. Jefferson Cnty., Ala., June 5, 2019; June 6, 2019; July 23, 2019).

[29] *See Hooper*, Order, No. SM-2017-902861.00 (Small Claims Ct. Jefferson Cnty., Ala., June 16, 2019).

at 189:22-190:23.[30]  Moxley & Associates, though, felt that Midland could prevail at trial "based on, with, and  as a result of the account documentation and other evidence that Midland had provided to [Moxley & Associates] previously[,]"—in part because the trial was in small claims court, which may allow "affidavit testimony in the place of live witness testimony."  Ex. 5, Moxley Aff. at ¶ 20.[31]

- **The collection lawsuit proceeded to trial in small claims court.**

On July 22, 2019, Midland Funding's collection lawsuit proceeded to trial in the small claims court.  *See* Ex. 13;[32] Ex. 5, Moxley Aff. at ¶ 21.  Mr. Moxley attended the collection trial on behalf of Midland Funding.  *Id*.  Mr. Moxley brought several documents to the trial, including Mr. Sell's affidavit attesting to Midland Funding's acquisition and ownership of Hooper's account, the underlying chain-of-title documentation, Hooper's Walmart credit card monthly account statements, and Midland's Field Data sheet regarding Hooper's account.  *See* Ex. 5, Moxley Aff. at ¶ 22.  At the trial, Mr. Moxley attempted to have each of these documents admitted

---

[30] The transcript of the deposition of Mr. Richmond (*i.e.*, Midland's designated corporate representative) is being submitted in connection with this brief as Exhibit 12.

[31] *Cf.* R. J, ALA. SMALL CLAIMS RULES (**"The court in its discretion may . . . receive sworn written or recorded statements of witnesses or parties not present at the trial."**) (emphasis added).

[32] The small claims court's final judgment order, which was marked as Defendants' Exhibit 30 to Hooper's deposition (*see* Ex. 1, Hooper Dep. 94:17-95:9), is being submitted in connection with this brief as Exhibit 13.

into evidence and otherwise argued in support of Midland Funding's claims.  *Id.* Following the trial, the state court entered judgment in favor of Hooper.  *See* Ex. 13.

Hooper did not do anything to prepare for the trial, did not attend the trial, does not know what took place at the trial, does not know who attended the trial on behalf of Midland, does not know whether Midland's lawyer attempted to introduce evidence at the trial, does not know what his attorney did at the trial, and does not know whether any witness appeared at the trial on his behalf.  *See* Ex. 1, Hooper Dep. 95:7-11; *id.* at 97:5-9; *id.* at 103:3-104:3.  **Hooper further admitted that he does not know whether Midland filed its collection lawsuit without intending to prove its claims against him and does not know what, if anything, Midland should have done differently in regard to proving its claims against him**:

> Q:    And my first question is this, Mr. Hooper.  Do you believe that Midland filed its collection lawsuit against you for the Walmart account, do you think Midland filed that lawsuit against you without intending to prove its claims against you?

> [Hooper's counsel]: Object to the form.

> A:    **I don't—I don't know what they were intending.**

> Q:    Okay.

> A:    **There is no way for me to know what they were intending.**

> Q:    Do you think Midland should have done anything differently in terms of trying to prove its claims against you?

> [Hooper's counsel]: Object to the form.

> A:    **I don't know.**

Ex. 1, Hooper Dep. 141:3-20 (emphasis added).

- **Midland—**████████████████████**—required Moxley &
  Associates to comply with the FDCPA and all other applicable law.**

████████████████████████████████████████████████

████████████████████████████ Midland required Moxley & Associates to

comply with the FDCPA and all other relevant laws in regard to Hooper, including

in regard to filing the lawsuit, serving the lawsuit on Hooper, moving for and

obtaining a default judgment, instituting a garnishment proceeding, and prosecuting

the lawsuit through and at trial.  *See, e.g.*, Ex. 12, Richmond Dep. 154:5-155:2; *id.*

at 159:9-18; *id.* at 186:18-187:3;[33] Ex. 2, Richmond Decl. at Attach. 7, ████████

████████████████████████████████████████████████

████;[34] *see also* Ex. 2, Richmond Decl. at ¶ 13; Ex. 5, Moxley Aff. at ¶ 24.

Other than his conclusory allegations regarding service of process and the

resulting default judgment and garnishment, Hooper either cannot state whether—

or has flatly disclaimed that—Midland acted improperly, recklessly, carelessly,

wrongfully, harassingly, oppressively, abusively, deceptively, falsely, or in a

---

[33] *See also, e.g.*, Ex. 12, Richmond Dep. 120:1-121:2; *id.* at 126:11-18; *id.* at 127:12-
139:17; *id.* at 152:15-153:20; *id.* at 169:19-170:22; *id.* at 175:16-176:15; *id.* at 189:22-190:23.

[34] *See also, e.g.*, Ex. 2, Richmond Decl. at Attach. 7, ████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████. *See, e.g.*, Ex. 12, Richmond Dep. 58:14-59:15.

misleading manner in regard to him.  *See id.* at 143:7-148:5.[35]  **Hooper further**

**admitted that he does not believe that Midland should have known that he**

**(allegedly) was not served with Midland Funding's lawsuit**:

> Q:     Okay.  Do you believe they should have known that you didn't
>         actually—that that is not actually your signature, that you didn't
>         actually get served?
>
> [Hooper's counsel]: Object to the form.
>
> **A:     Do I believe they should have known?**
>
> Q:     Yes.
>
> **A:     No.**

Ex. 1, Hooper Dep. 78:11-19 (emphasis added); *see id.* at 78:1-10 (Hooper testifying

that he does not know whether Midland knew that he (allegedly) was not served with

Midland Funding's collection complaint).

## <u>Argument and Citations to Authority</u>

Hooper's FDCPA and state law claims against Midland are based solely on

two supposed theories of liability: 1) Midland purportedly did not intend or attempt

to prove its collection claims against Hooper at trial; and 2) Midland allegedly failed

to serve its collection lawsuit on Hooper and, in turn, obtained an improper default

judgment and thereafter wrongfully garnished his wages.[36]  Hooper's theories of

liability, however, are misplaced and unsupported.

---

[35] Moreover, Hooper testified that he does not believe Midland's "business model" is "illegal."  Ex. 1, Hooper Dep. 142:19-143:6.

[36] *See* Doc. 1.

14

I.      **Hooper's conclusory "no intent or attempt to prove" allegations fail to carry the day for his FDCPA count.**

Hooper contends that Midland violated the FDCPA by allegedly filing the underlying state court debt collection lawsuit without intending or attempting to prove its claims against him.[37]  Neither the facts nor the law supports his contention.

A.      **Hooper's own deposition testimony flatly contradicts his "no intent or attempt to prove" theory.**

As an initial matter, Hooper effectively has abandoned his "no intent or attempt to prove" theory given the fact that Hooper **admitted under oath** that he does not know whether Midland filed its collection lawsuit without intending to prove its claims and cannot articulate what, if anything, Midland should have done differently in regard to proving its collection claims.[38]  Moreover, when asked to explain what Midland supposedly did wrong relative to him, Hooper recited only his allegations regarding the alleged non-service and the resulting default judgment and garnishment proceeding.[39]  In other words, Hooper did not mention anything in regard to Midland's intent or efforts to prove its collection case against him; further still, he admitted that Midland's "business model" was not "illegal."[40]

---

[37] *See* Doc. 1 at pp. 5-7, ¶¶ 21-29.

[38] *See* Ex. 1, Hooper Dep. 141:3-20.

[39] *Id.* at 143:7-148:5.

[40] *Id.* at 142:19-148:5.

Because Hooper's "no intent or attempt to prove" contention "is contradicted by his own deposition testimony[,]" Midland is entitled to summary judgment. *Sullivan v. Davidson Trucking, Inc.*, No. 2:17-cv-805-RDP, 2020 WL 3545541, at *7 (N.D. Ala. June 30, 2020). *See, e.g.*, *Latham v. City of Birmingham*, No. 2:18-cv-01326-RDP, 2020 WL 3640002, at *10 (N.D. Ala. July 6, 2020) (granting defendant's motion for summary judgment where "the undisputed Rule 56 evidence clearly contradicts [p]laintiff's contention"). "One of the principal purposes of the summary judgment rule is **to isolate and dispose of factually unsupported claims**[,]" and Hooper's backpedaling deposition testimony places his incompatible "no intent or attempt to prove" argument squarely within the scope of such purpose. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) (emphasis added).

> ### B.  A debt collector does not violate the FDCPA by filing a state court collection case that it does not intend or attempt to prove at trial.

Hooper's "no intent or attempt to prove" contention fails for an additional, albeit equally fundamental, reason —it is not an actual theory of liability under the FDCPA. In fact, this Court has held that a debt collector's "filing and prosecution of [a] state court collection lawsuit **without *possessing or obtaining* evidence to prove its claims** does not rise to an FDCPA violation." *Hooper v. Midland Funding, LLC*, No. 2:14-cv-02008-AKK, 2017 WL 394839, at *4 (N.D. Ala. Jan. 30, 2017) (quotation omitted) (emphases added). The Seventh Circuit also has gotten right to the heart of the matter, holding that "the FDCPA does not prohibit debt collectors

16

from filing a collection lawsuit **without intending to go to trial**." *St. John v. Cach, LLC*, 822 F.3d 388, 391 (7th Cir. 2016) (emphasis added).

"Nor is it deceptive to file a good-faith claim in the hope that initiating a lawsuit will convince an opposing party to settle the dispute." *Lena v. Cach, LLC*, No. 14 C 01805, 2015 WL 4692443, *4 (N.D. Ill. Aug. 6, 2015); *see id.* at *1 (dismissing claim that defendant violated the FDCPA "by pursuing a state-court collection action against plaintiff [] when [defendant] knew it could not prove its case at trial and had no intention of actually trying to do so").[41]  As made clear by the applicable case law, this Court should grant summary judgment in favor of Midland on Hooper's FDCPA claim.

### C.    The *Hamilton* case is dispositive.

In *Hamilton*, Midland filed a state small claims court collection lawsuit against the plaintiff-debtor to recover a charged-off debt that had been assigned to Midland by Chase Bank, and that collection case proceeded to trial.  *See* 2017 WL 394839 at *2.  At trial, Midland's lawyer "presented the affidavit of a Midland employee, chain-of-title documentation, and [the debtor]'s monthly Chase account statements in support of [Midland's] case[,]" but Midland did not offer any live

---

[41] *See, e.g.*, *Garcia v. Portfolio Recovery Assocs., LLC*, No. 1:15-cv-3685 (NLH/JS), 2018 WL 3218665, *4 (D.N.J. June 29, 2018) ("The Court finds similarly that the filing of a state court collection action, **even without the intention of eventually proving the merits of the action at trial**, does not constitute a 'false representation or deceptive means' to collect the debt, largely for the same reasons the Court finds no violation of § 1692e(5) [of the FDCPA].") (emphasis added).

witness testimony.  2017 WL 394839 at *2.  Following the trial, the small claims court ruled against Midland, and the plaintiff-debtor thereafter sued Midland in this Court for alleged violations of the FDCPA and state law based on that underlying collection case, alleging that "Midland never intended to offer one shred of evidence to prove its case."[42]  *See* 2017 WL 394839 at *2.   Midland moved for summary judgment on all counts, which this Court granted in full.  *Id.* at *6.

More specifically, this Court found in favor of Midland on the plaintiff's section 1692d (of the FDCPA)[43] claim because "'the filing of a lawsuit does not have the natural consequence of harassing or oppressing a debtor.'"  *Hamilton*, 2017 WL 394839 at *3 (quoting *Milkjovic v. Shafritz and Dinkin, P.A.*, 791 F.3d 1291, 1305 (11th Cir. 2015)).  Further still, this Court found in *Hamilton* that Midland had sufficiently demonstrated its ownership of the sued-upon debt via the chain of title

---

[42] *Thera Hamilton v. Midland Funding, LLC*, Pl.'s Compl. at p. 9, ¶ 58, No. 2:14-cv-02008-AKK (N.D. Ala. Oct. 20, 2014).

[43] Section 1692d of the FDCPA "prohibits debt collectors from 'engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.'"  *Hamilton*, 2017 WL 394839 at *3 (quoting 15 U.S.C. § 1692d) (bracketed text supplied by court).

documentation, the plaintiff-debtor's monthly account statements, the attesting affidavit of a Midland employee, and Midland's Field Data sheet (*i.e.*, "a data printout from the purchased [original creditor] electronic records indicating [the plaintiff-debtor]'s credit account number and the full amount of the debt due"). 2017 WL 394839 at *3. Thus, this Court ruled that "[t]hese documents belie [the plaintiff-debtor]'s contention that Midland filed a frivolous lawsuit" and further held that "'Midland's filing and prosecution of [a] state court collection lawsuit without possessing or obtaining evidence to prove its claims does not rise to an FDCPA violation.'" *Id.* at *4 (quoting *Bandy v. Midland Funding LLC*, No. 12-00491-KD-C, 2013 WL 210730, at *9 (S.D. Ala. Jan. 18, 2013)). Here, Midland presented the same specific types of evidence[44] and, as such, Hooper's conclusory allegations regarding Midland's supposed "bogus [collection] lawsuit[ with] . . . no competent evidence"[45] are due no accord under the law. *See Hamilton*, 2017 WL 394839 at *4.

This Court likewise found in favor of Midland on the *Hamilton* plaintiff's section 1692e (of the FDCPA)[46] claim because "the filing of a debt-collection lawsuit without the immediate means of proving the debt does not have the natural

---

[44] *See, e.g.*, Ex. 5, Moxley Aff. at Attachs. 1-4.

[45] *E.g.*, Doc. 1 at p. 6, ¶ 24.

[46] Section 1692e of the FDCPA prohibits a debt collector from "'us[ing] any false[,] deceptive, or misleading representation or means in connection with the collection of any debt[.]'" *Hamilton*, 2017 WL 394839 at *4 (quoting 15 U.S.C. § 1692e) (first bracketed text supplied by court) (second and third bracketed text added).

consequence of harassing, abusing, or oppressing a debtor." *Hamilton*, 2017 WL 394839 at *4 (quotation omitted). Here, Hooper's FDCPA count likewise is based solely on the underlying collection action.[47]

Hooper has alleged that Midland violated the FDCPA by not intending or by not "doing enough," so to speak, to prove its collection case at trial. However, and just like the plaintiff in *Hamilton*, Hooper's allegations are belied by the evidence—Midland, in fact, did attempt to prove its collection claims at trial[48]—especially considering the fact that an affidavit may take the place of live witness testimony in Alabama small claims court. *See* R. J, ALA. SMALL CLAIMS RULES. In any event, this Court and others have held that Hooper's alleged theory is not actionable under the FDCPA. This Court should follow its own guidance from *Hamilton*—as well as the analogous persuasive authority provided by courts from across the country—and enter summary judgment in favor of Midland on Hooper's FDCPA count.

### D. The FDCPA does not preclude a debt collector from filing and prosecuting a collection lawsuit in good faith.

"A plaintiff's desire, and any associated legal strategy, to obtain a favorable judgment as inexpensively or expeditiously as possible is not improper, nor is it a FDCPA violation." *Delisi v. Midland Funding, LLC*, No. 14-2125, 2015 WL

---

[47] *See* Ex. 1, Hooper Dep. 143:7-148:5.

[48] *See, e.g.*, Ex. 5, Moxley Aff. at ¶¶ 4-6, 22.

20

4393901, at *7 (E.D. Mo. July 16, 2015).[49]  To hold otherwise would run afoul of the FDCPA's "apparent objective of preserving creditors' judicial remedies." *Heintz v. Jenkins*, 514 U.S. 291, 296 (1995) (recognizing that an unsuccessful collection action did not violate the FDCPA).  Rather than delving into Midland's state court litigation strategy or whether its evidence was enough to carry the day—both of which would be inappropriate[50]—the only relevant inquiry is whether Midland had a good faith basis for pursuing a legitimate means of collection.  *See Hamilton*, 2017 WL 394839 at *4 ("These documents belie [the plaintiff]'s contention that Midland filed a frivolous lawsuit."); *Pantoja*, 2015 WL 1396609 at *4 ("In the final analysis, there is no evidence that Defendant lacked a good-faith basis for pursuing its collection claim in state court, and that is sufficient to dispose of Plaintiff's FDCPA claim here."); *Krawczyk v. Centurion Capital Corp.*, No. 06-C-6273, 2009 WL 395458, *10 (N.D. Ill. Feb. 18, 2009) (rejecting similar claims because "Centurion had a good faith basis for pursuing its collection action in state court").

---

[49] *See also St. John*, 822 F.3d at 391 ("Section 1692e(5) [of the FDCPA] does not punish debt collectors for engaging in a customary cost-benefit analysis when conducting litigation, nor does it constrain them to mechanically steer the proceedings toward trial with no regard for expense or efficiency.").

[50] *See Pantoja v. Portfolio Recovery Assoc., LLC*, No. 13C7654, 2015 WL 1396609, *4 (N.D. Ill. Mar. 24, 2015) ("declin[ing] to police the adequacy of state court filings in the context of an FDCPA claim"); *Owusumensah v. Cavalry Portfolio Servs., LLC*, No. 14-C-3640, 2014 WL 6461704, *2 (N.D. Ill. Nov. 18, 2014) (same).

Prior to filing suit, Midland possessed account-level documentation linking Hooper to the debt sued upon (*e.g.*, Hooper's monthly account statements), the underlying Bill of Sale and related affidavit of sale, and its own attesting affidavit.[51] These materials demonstrate Midland's good faith as a matter of law. *See Hamilton*, 2017 WL 394839, at *4 ("These documents belie [the plaintiff]'s contention that Midland filed a frivolous lawsuit."); *Pantoja*, 2015 WL 1396609, at *4 (concluding that the defendant debt collector did not lack a good-faith basis for filing the collection suit, and thus did not violate the FDCPA, where it produced the debtor's monthly account statements, a supporting affidavit of its employee, and the underlying bill of sale upon which the affidavit was based).[52]  Perhaps most notably, Midland's good-faith basis in filing and prosecuting the underlying collection suit against Hooper is evidenced by the fact that **Hooper made two payments on the account to Midland in 2016**.[53]  In other words, it is axiomatic that Midland had a good faith basis for filing its collection lawsuit, given that Hooper twice *directly* acknowledged that he owed the debt to Midland.

Further still, the undisputed evidence establishes that Midland intended to prosecute its case through trial.  Not only did Midland see the action through trial[54]—

---

[51] *Id.*; *see also* Ex. 5, Moxley Aff. at Attach. 4 (MCM's attesting affidavit).

[52] *Cf., e.g.*, Ex. 5, Moxley Aff. at ¶¶ 4-6, 20-22.

[53] *See* Ex. 2, Richmond Decl. at ¶ 9; *id.* at Attach. 5.  *Cf.* Ex. 1, Hooper Dep. 70:23-72:19.

[54] *See, e.g.*, Ex. 13.

as opposed to filing a voluntary dismissal, which still would not be a violation of the FDCPA[55]—Midland provided evidence to its counsel prior to the filing of the collection case, including but not limited to an affidavit of a MCM representative attesting to Midland's acquisition and ownership of Hooper's account.[56]  *Cf., e.g.*, *Bradford v. LVNV Funding, LLC*, 3 F.Supp. 3d 708, 712 (E.D. Tenn. 2014) ("[T]he defendants here attached a sworn affidavit to their state court suit, evidencing an intent to pursue the action."); R. J, ALA. SMALL CLAIMS RULES ("The [small claims] court in its discretion may . . . **receive sworn written or recorded statements of witnesses or parties not present at the trial**.") (emphasis added).  And Midland's counsel took that evidence to trial and strenuously argued on Midland's behalf.[57]

In short, Midland was entitled to invoke any available judicial remedies to collect Hooper's debt, and the ultimate outcome—whether settlement, default judgment, victory, or loss—does not matter.  "To hold otherwise would mean every time a debt buyer filed suit in good faith, but ultimately failed to win on the merits or faced dismissal on the basis of its complaint, it could be subject to liability under [the FDCPA]."  *Richardson v. Midland Funding, LLC*, No. 13-1356, 2013 WL 6719110, *4 (D. Md. Dec. 18, 2013), *aff'd*, 583 Fed. App'x 124 (4th Cir. 2014).

---

[55] *See, e.g.*, *Krawczyk*, 2009 WL 395458 at *9; *see also St. John*, 822 F.3d at 391; *Lena*, 2015 WL 4692443 at *4.

[56] *See, e.g.*, Ex. 5, Moxley Aff. at ¶¶ 4-6.

[57] *See* Ex. 5, Moxley Aff. at ¶ 22.

23

That is the result Hooper seeks—but "[t]his cannot be in line with the goals of the FDCPA, which is intended to 'safeguard[] consumers from abusive and deceptive debt collection practices,' . . . not from legitimate collection suits." *Id.* Midland is entitled to summary judgment on Hooper's FDCPA count.[58]

## II.    Hooper's conclusory allegations regarding service and the subsequent default judgment and garnishment do not save his FDCPA count.

Hooper also contends that Midland violated the FDCPA by obtaining a default judgment, and thereafter garnishing his wages, even though Midland allegedly had not served its collection lawsuit on him.[59] Like his "no intent or attempt to prove" theory, though, both the evidence and the law are fatal to this contention of Hooper.

### A.    Hooper's own testimony torpedoes his "lack of service" argument.

Again similar to his "no intent or attempt to prove" theory, Hooper's own deposition testimony wrecks his argument that Midland violated the FDCPA by obtaining a default judgment (and subsequently garnishing his wages) even though he allegedly had not been served with Midland's lawsuit. More specifically, Hooper **admitted under oath** that he does not believe that Midland knew—*or even should*

---

[58] Hooper did not seek medical treatment as a result of Midland's alleged conduct. *See* Ex. 1, Hooper Dep. 162:2-11; *id.* at 165:15-166:21. As such, Hooper is not entitled to recover damages for any unsubstantiated allegations of mental anguish and emotional distress on any of his FDCPA or state law claims. *See, e.g.*, *Crutcher v. Williams*, 12 So. 3d 631, 651 (Ala. 2008); *Costa v. Nat'l Action Fin. Servs.*, 634 F.Supp. 2d 1069, 1078 (E.D. Cal. 2007).

[59] *See* Doc. 1 at pp. 4-5, 7, ¶¶ 10-18, 26-29.

*have known*—that he (allegedly) was not served with Midland Funding's lawsuit.[60]
Given Hooper's own contradictory and discrediting deposition testimony, Midland
is entitled to summary judgment on Hooper's unsupportable FDCPA claim.  *See*
*Latham*, 2020 WL 3640002 at *10; *Sullivan*, 2020 WL 3545541 at *7.[61]  In other
words, since Hooper does not dispute that Midland did not know—and agrees that
Midland had no reason to know—that Hooper (allegedly) was not served, then it is
axiomatic that he cannot dispute that Midland had a good faith basis for moving
forward with the default judgment and subsequent garnishment proceeding.  And
because Midland had a good faith basis, it cannot be held liable under the FDCPA.
*See, e.g.*, *Hamilton*, 2017 WL 394839 at *4.[62]

## B.    Hooper's "lack of service" contention misconstrues the law.

The case of *Rodrigo v. Barclays Bank Delaware*, No. 16-cv-808-JAH (JMA),
2017 WL 1155373 (S.D. Cal. Mar. 27, 2017) is ***markedly*** instructive.  There, the
plaintiff-debtor claimed that the defendants, a debt collector and its outside
collection law firm, violated the FDCPA because the defendants "'effectuated
fraudulent service'" of process on the plaintiff.  2017 WL 1155373 at *2 (quoting
record) (bracketed text supplied by court).  The relevant particulars of the *Rodrigo*

---

[60] *See* Ex. 1, Hooper Dep. 78:1-19.

[61] *See also, e.g.*, *Catrett*, 477 U.S. at 323-24; *see generally Ex parte Gen. Motors Corp.*,
769 So. 2d 903, 909 (Ala. 1999) (recognizing that a movant "need not prove a negative in order to
prevail on [its] motion for a summary judgment") (quotation omitted).

[62] *See supra* at fn.56 (collecting cases).

case are substantively identical to the circumstances of this action: 1) the defendant-debt collector had obtained a default judgment in its underlying collection action against the plaintiff-debtor based on the filed proof of service; 2) the plaintiff filed a motion to vacate the default judgment, "arguing that she was never personally served with the summons and complaint[;]" 3) the defendant-debt collector opposed the plaintiff's motion; 4) **the state court granted the plaintiff's motion to vacate the default judgment**; and 5) the plaintiff thereafter sued the defendants in federal court for allegedly violating the FDCPA and state law. *Id.* The *Rodrigo* defendants filed a motion to dismiss the plaintiff's complaint, arguing that they could not be held liable under the FDCPA because "proof of service was not procured, and subsequently filed, in bad faith" and further that "the record reflects that proof of service was reliably obtained, relied upon, and filed with the [state court] in good faith[.]" 2017 WL 1155373 at *3, 6. Indeed, the proof of service form at issue contained the process server's signature and declaration of service. *See id.* at *2.[63]

The federal court agreed with the defendants and granted their motions to dismiss the plaintiff's FDCPA claims, noting that "even if [it had] found that [the defendant-collection law firm], through its registered process server, failed to serve the correct individual, although an error that may evidence negligence, as a matter of law, that finding, on this record, **would not support the inference that [the**

---

[63] *Cf.* Ex. 5, Moxley Aff. at Attach. 6.

defendant] acted purposefully to procure proof of service in bad faith, and file an allegedly false proof of service in violation of the FDCPA**." *Rodrigo*, 2017 WL 1155373 at *7 (emphasis added).  As in *Rodrigo*, Midland's outside collection law firm reasonably relied upon the duly signed, attested, and filed Service Return form when moving for default judgment.[64]  In sum, this Court should enter summary judgment in favor of Midland on Hooper's FDCPA claim because the record evidence does "not support the inference that [Midland or its counsel] acted purposefully to procure proof of service in bad faith, and file an allegedly false proof of service in violation of the FDCPA." *Rodrigo*, 2017 WL 1155373 at *7.

## III.   Midland is entitled to summary judgment on Hooper's state law claims.

Each of Hooper's state law claims is based upon—and solely upon—the underlying collection lawsuit.[65]  Thus, as an initial matter, Midland is entitled to summary judgment on each of Hooper's state law claims for the same reasons that it is entitled to summary judgment on his FDCPA claim.

### A.   There is no cause of action for the negligent or wanton filing or prosecution of a lawsuit.

Hooper's Count Two for negligence and Count Three for recklessness and wantonness are both premised solely on the underlying collection action.[66]  Thus,

---

[64] *See* Ex. 5, Moxley Aff. at ¶¶ 10-13; *see also id.* at Attach. 6.

[65] *See, e.g.*, Doc. 1 at pp. 8-11, ¶¶ 30-54; *cf. id.* at pp. 3-6, ¶¶ 5-25.

[66] *See* Doc. 1 at pp. 8-9; ¶¶ 30-39.

27

summary judgment should be entered in favor of Midland on Counts Two and Three because **there is no cause of action for the negligent or wanton filing or prosecution of a civil lawsuit under Alabama law**. *See, e.g.*, *Ex parte Miller, Taylor, Snider & Odom, LLC*, 942 So. 2d 334, 336, n.1 (Ala. 2006) (recognizing that "a claim of negligent or wanton prosecution of a civil action is not a cognizable tort claim") (quotation omitted); *Stewart v. Bureaus Inv. Grp., LLC*, No. 3:10-CV-1019-WKW, 2015 WL 7572312, *21 (M.D. Ala. Nov. 24, 2015) ("When the prosecution of such a civil action is the conduct at issue, the claimant cannot prevail on a general claim for wanton or intentional conduct.").[67]

## B.    There is no evidence that Midland acted with actionable "malice."

While a lawsuit obviously must form the basis of Hooper's malicious prosecution claim (*i.e.*, Count Four), he has failed to adduce any evidence that Midland's underlying collection lawsuit satisfies the elements of that claim. *See Cutts v. American United Life Ins. Co.*, 505 So. 2d 1211, 1214 (Ala. 1987) (setting forth the requisite elements of a malicious prosecution claim). "The question is not whether the [malicious prosecution] plaintiff was guilty of the thing charged, but

---

[67] Further, courts throughout the nation have refused to recognize that debt collectors "have a duty of care to [p]laintiff to ensure that its debt collection activities are lawful," dismissing negligence claims accordingly. *Kozaczek v. New Hampshire Higher Educ. Assistance Found.*, No. 1:12-cv-00055, 2014 WL 3640779, *4-5 (D. Vermont July 21, 2014); *see Bent v. Mackie Wolfe & Mann, P.C.*, No. 3:13-cv-2038, 2013 WL 4551614, *5-6 (N.D. Tex. Aug. 28, 2013) (same); *Mafeti v. Activus*, No. DKC 2008-0540, 2009 WL 2507423, *13-14 (D. Md. Aug. 14, 2009) (same).

whether the [malicious prosecution] defendant *acted in good faith on the appearance of things*." *Ravenel v. Burnett*, 5 So. 3d 592, 598 (Ala. Civ. App. 2008) (bracketed text and italics supplied by court) (quotations omitted).  "In other words, '[i]f there are **any** undisputed facts of record establishing that [the defendant] had probable cause to bring the former action . . . against [the plaintiff], then [the plaintiff] cannot recover for malicious prosecution and summary judgment is appropriate." *Ravenel*, 5 So. 3d at 598 (quoting *Eidson v. Olin Corp.*, 527 So. 2d 1283, 1285 (Ala. 1988)) (bracketed text supplied by court) (emphasis added).  As noted above, Midland had a good faith basis for filing the collection action against Hooper and therefore is entitled to summary judgment on Count Four.

### C.    Hooper's abuse of process claim misses the mark.

In Count Five, Hooper brings a claim for abuse of process, which—again—is based solely on the underlying state court collection action.[68]   "The essential elements of abuse of process are: 1) [a]n ulterior purpose[;] and 2) a willful act in the use of the process not proper in the regular conduct of the proceeding." *Reynolds v. McEwen*, 416 So. 2d 702, 706 (Ala. 1982).  The second element requires that the process be effected for some purpose it was "not intended by law to effect," and a "defendant is not liable for abuse of process simply because it prosecuted the plaintiff with an ulterior purpose." *Willis v. Parker*, 814 So. 2d 857, 865-66 (Ala.

---

[68] *See* Doc. 1 at pp. 10-11; ¶¶ 46-54; *cf. id.* at pp. 3-6, ¶¶ 5-25.

2001).  In fact, even if Midland had filed and thereafter dismissed its collection complaint without proceeding to trial—which it did not—that still "cannot constitute wrongful use because . . . [t]here is no liability where the defendant has done nothing other than carry out the process to its authorized conclusion, even though with [or, even if having] bad intentions."  *ClassroomDirect.com, LLC v. Draphix, LLC*, 314 F. App'x 169, 175 (11th Cir. 2008).

There is absolutely no evidence that Midland's *use* of the process was wrongful, and therefore Midland is entitled to summary judgment on Count Five. *See ClassroomDirect.com*, 314 F. App'x at 175 ("Unless a defendant 'somehow acted outside the boundaries of legitimate procedure after the charge had been filed,' there is no wrongful use.") (citations omitted).[69]  Rather, Midland merely "pursued the small-claims action to collect what [it] thought to be a legitimate debt." *Hollander v. Nichols*, 19 So. 3d 184, 194 (Ala. 2009).[70]  As such, this Court should grant summary judgment in favor of Midland on Count Five.

## Conclusion

Pursuant to the above and Federal Rule of Civil Procedure 56, Midland respectfully requests that this Court enter an order granting summary judgment in favor of Midland on all claims filed against it by Hooper.

---

[69] *See also Hempel-Dubois v. Portfolio Recovery Assocs., LLC*, No. 11-cv-09-JD, 2011 WL 3627294, *4 (D.N.H. Aug. 17, 2011).

[70] *Cf.* Ex. 1, Hooper Dep. 126:6-19.

Date: December 14, 2020

One of the Attorneys for Defendants

**OF COUNSEL:**

Jason B. Tompkins
Thomas R. DeBray, Jr.
Balch & Bingham LLP
Post Office Box 306
Birmingham, Alabama 35201-0306

## CERTIFICATE OF SERVICE

I hereby certify that I filed under seal the foregoing and attached with the Clerk of the Court and that service of the same will be perfected upon the following via U.S. mail, postage prepaid, on this the 14th day of December, 2020:

John C. Hubbard
JOHN C. HUBBARD, LLC
Post Office Box 953
Birmingham, Alabama 35201

W. Whitney Seals
COCHURN & SEALS, LLC
Post Office Box 10448
Birmingham, Alabama 35202-0448

Of Counsel

31