FILED

2021 Jan-28  PM 10:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **Colby Hooper,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CASE NO.:** |
| ) | **2:19-cv-01601-HNJ** |
| ) | |
| **Midland Funding LLC;** *et al.,* ) | |
| ) | |
| **Defendants.** ) | |

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Plaintiff Colby Hooper initially brought a single Fair Debt Collection Practices Act ("FDCPA") count and four state law counts against Defendants Midland Funding LLC and Midland Credit Management, Inc. (collectively, "Midland"), and each of Hooper's claims was based solely on the underlying state court debt collection action filed against him by Midland Funding.[1]   Hooper originally premised his FDCPA count on two supposed theories of liability: 1) Midland purportedly did not intend or attempt to prove its underlying collection case against Hooper at trial; and 2) Midland allegedly filed a fraudulent proof of service

---

[1] *See* Doc. 1; *see also* Doc. 39 at pp. 6-19.

regarding its collection lawsuit against Hooper and, in turn, supposedly obtained an improper default judgment and thereafter wrongfully garnished his wages.[2]

When faced with Midland's motion for summary judgment, though, Hooper not only abandoned all four of his state law counts, but he also conceded his first supposed theory of FDCPA liability.[3]  Thus, all that remains at issue is Hooper's contention that Midland purportedly violated section 1692e(10) of the FDCPA[4] by "us[ing] and fil[ing] a false service affidavit with the court in the underlying state court action" and, in turn, by allegedly "us[ing] this false affidavit to obtain a default judgment against . . . Hooper which caused him harm."[5]  However, both the record evidence and the law are fatal to Hooper's lone remaining theory of liability,[6] and this Court should grant Midland's motion for summary judgment.[7]

**Midland's Reply to Hooper's Responses to Midland's Statement of Facts**

In his response to Midland's motion for summary judgment, Hooper takes issue with three of the facts set forth in the "Statement of Undisputed Relevant

---

[2] *See* Doc. 1 at pp. 3-7, ¶¶ 5-29; *see also* Doc. 43 at p. 2.

[3] *See, e.g.*, Doc. 43 at pp. 1-3.

[4] *See, e.g.*, Doc. 43 at p. 5.  Section 1692e(10) of the FDCPA prohibits a debt collector from using "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."  15 U.S.C. § 1692e(10).

[5] Doc. 43 at p. 2.

[6] *See infra*; Doc. 39 at pp. 6-19; *id.* at pp. 29-32; Doc. 44.

[7] *See* Doc. 34; *see also* Docs. 37-39.

Material Facts" section of Midland's summary judgment brief.[8]  Each of Hooper's objections to Midland's three submitted facts at issue misses the mark.

First, Hooper responds that, "in his deposition, [he] repeatedly disputed ever being served with the state court lawsuit by the process server[.]"[9]  As an initial matter, whether Hooper was actually served is immaterial to Midland's arguments for summary judgment, and thus any dispute about that fact does not change the outcome.[10]  And, in any event, Hooper's self-serving, conclusory allegation pales in comparison to Midland's numerous evidentiary submissions demonstrating that he was, indeed, served—including but not limited to: 1) the affidavit of the process server;[11] 2) the affidavit of the owner and founder of the independent process service company for which the process server worked, VanSlam, Inc.;[12] and 3) VanSlam, Inc.'s "Service History" log, which sets forth the specific location coordinates, date, and time of service of Midland Funding's collection lawsuit upon Hooper.[13]

---

[8] *See* Doc. 43 at pp. 6-8.

[9] Doc. 43 at p. 7.

[10] Hooper contends that "[t]his is the core dispute in the case." Doc. 43 at p. 7 (emphasis omitted). Not so. The core question is not whether Midland Funding's collection lawsuit was actually served on Hooper—the core question is whether Midland had a good faith basis for moving forward with the default judgment and subsequent garnishment proceeding against Hooper. *See infra*; Doc. 39; Doc. 44.

[11] *See* Doc. 38-8 at p. 3, ¶¶ 3-4.

[12] *See* Doc. 38-7 at p. 4, ¶¶ 6-7.

[13] *Id.* at p. 9.

Second, Hooper now claims that he does not recall having been served with Midland's underlying process of garnishment.[14]  Again, though, Hooper's objection is immaterial; his sole remaining claim is not premised on any alleged failure of Midland to serve its process of garnishment upon him.[15]  Moreover, his objection is flatly contradicted by his own deposition testimony wherein he admitted that he had no reason to dispute that he signed the return of service form regarding the service of Midland Funding's process of garnishment.[16]

Finally, Hooper testified at his deposition that he does not believe that Midland should have known that he (allegedly) was not served with the collection lawsuit.[17]  In an apparent attempt to soften the blow posed by such a striking admission, Hooper responds that he also testified that he does not know "what [Midland] knew or did not know."[18]  This third responsive objection is perplexing—particularly given the fact that Midland expressly referenced the same additional deposition testimony of Hooper in its own summary judgment brief.[19]  In sum, Hooper does not dispute that Midland did not know—and agrees that Midland had

---

[14] *See* Doc. 43 at p. 7.

[15] *See, e.g.*, Doc. 43.

[16] *See* Doc. 38-1 at p. 25 (Colby Hooper Dep. 93:14-16 (Oct. 23, 2020)); *see also id.* at p. 25 (Hooper Dep. 93:8-9); *cf.* Doc. 38-10 at p. 2.

[17] *See* Doc. 38-1 at p. 21 (Hooper Dep. 78:11-19).

[18] Doc. 43 at p. 8.

[19] *See* Doc. 39 at p. 19 (citing Hooper Dep. 78:1-10); *id.* at p. 29 (citing Hooper Dep. 78:1-19).

no reason to know—that he (allegedly) was not served with the collection lawsuit;[20]

thus, Hooper cannot dispute that Midland had a good faith basis for moving forward

with the default judgment and subsequent process of garnishment.

## Argument

### I.    Hooper's arguments regarding section 1692e of the FDCPA lack merit.

Hooper argues that Midland's motion for summary judgment should be

denied because Midland purportedly violated section 1692e of the FDCPA,[21] which

prohibits a debt collector from "us[ing] any false, deceptive, or misleading

representation or means in connection with the collection of any debt."  15 U.S.C. §

1692e.   As explained below, Hooper fails to support his contention with any

persuasively analogous authority, and his argument otherwise lacks merit.

#### A.    The *Miljkovic* case cuts against Hooper's argument.

Hooper first cites the case of *Miljkovic v. Shafritz & Dinkin, P.A.*, 791 F.3d

1291 (11th Cir. 2015) for the innocuous proposition that "[t]he FDCPA covers false

---

[20] In a footnote, Hooper mentions that his counsel objected to the form of two of the three primary deposition questions posed to Hooper on this "did not know/had no reason to know" front.  *See* Doc. 43 at p. 8, fn.3.  Hooper's counsel's form objections are of no import for several reasons.  First, the two subject deposition questions to which Hooper's counsel objected were not improper compound questions.  *See* Doc. 38-1 at p. 21 (Hooper Dep. 78:1-17).   Additionally, Hooper's counsel did not object to the third volley in the line of questions at issue—*i.e.*, what actually prompted Hooper's responsive answer confirming that he does not believe that Midland should have known that he (allegedly) was not served with the collection lawsuit.  *Id.* at p. 21 (Hooper Dep. 78:18-19).  Further still, and as discussed herein and in a number of Midland's prior filings, Hooper's arguments based on collateral estoppel and the *Rooker-Feldman* doctrine are inconsequential red-herrings.  *See infra*; *see also* Doc. 20; Doc. 26; Doc. 44 at pp. 14-18.

[21] *See* Doc. 43 at pp. 11-16.

statements made in documents filed in Court proceedings."[22]  However, in *Miljkovic*, the Eleventh Circuit did not posit that a debt collector somehow violates the FDCPA in relying upon a signed and attested return of service form or a duly entered court order.  Rather, there, the Eleventh Circuit actually affirmed the dismissal of the plaintiff-debtor's FDCPA claims, holding that "[t]he fact that [the defendant-debt collectors]' attempt to collect on [the plaintiff-debtor]'s debt by garnishing his wages 'turn[ed] out ultimately to be unsuccessful' does not make the filing of the sworn reply 'an action that cannot legally be taken'" under the FDCPA.  *Miljkovic*, 791 F. 3d at 1307 (quoting *Heintz v. Jenkins*, 514 U.S. 291, 296 (1995)).[23]

## B.    Hooper misconstrues the "strict liability" function of the FDCPA.

Hooper next mistakenly relies on characterizations of the FDCPA as a "strict liability statute" in arguing that whether Midland "acted in 'good faith,' or . . . reasonably relied on the service return when filing for the default or didn't know [Hooper allegedly] wasn't served with the lawsuit make[s] no difference."[24]

---

[22] Doc. 43 at p. 12.

[23] *Cf. id.* at 1306 ("Section 1692e [of the FDCPA] generally prohibits deceptive practices in debt collection.  Examples of proscribed conduct **include implying that the consumer committed any crime, falsely representing the amount of the debt, and threatening to take legal action that is not intended to be taken**.") (emphasis added).  No such conduct is at issue here.

[24] Doc. 43 at pp. 13-14.

**1.    Each of the cases offered by Hooper in support of his "strict liability" argument is distinguishable from the case at bar.**

None of the cases on which Hooper relies in regard to his "strict liability" argument is factually analogous to the case at bar or otherwise supports the denial of Midland's motion for summary judgment.  In *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185 (11th Cir. 2010),[25] the Eleventh Circuit found that the defendant's failure to register as an "out-of-state consumer collection agency" may support a cause of action under the FDCPA.  *See* 601 F.3d at 1197-98.[26]    Likewise distinguishable, the *Owen v. I.C. System, Inc.*, 629 F.3d 1263 (11th Cir. 2011) case[27] concerned a plaintiff-debtor's allegations that the defendant's collection letters misrepresented the amount and status of the sued-upon debt.  *See* 629 F.3d at 1269. And in *Bourff v. Rubin Lublin, LLC*, 674 F.3d 1238 (11th Cir. 2012),[28] the Eleventh Circuit held that the plaintiff-debtor pled a legally cognizable FDCPA claim in alleging that the defendant-collection firm "falsely stat[ed] in its collection notice that [the assignee of the subject debt] was the 'creditor'"—a defined term under the

---

[25] *See* Doc. 43 at pp. 13-14.

[26] In connection with the *LeBlanc* case, Hooper also cites *Ellis v. Solomon, P.C.*, 591 F.3d 130 (2d Cir. 2010).  *See* Doc. 43 at p. 14.  In *Ellis*, because the "defendants failed to inform the [plaintiff] that the commencement of the [collection] lawsuit had no effect on the information contained in the validation notice[,]" the Second Circuit affirmed the district court's finding that "the service of the summons and complaint overshadowed the validation notice in violation of the FDCPA."  591 F.3d at 132.  The case at bar concerns no such issue.

[27] *See* Doc. 43 at pp. 14-16.

[28] *See* Doc. 43 at p. 14.

FDCPA that expressly excepts assignees of a debt.  674 F.3d at 1241; *cf.* 15 U.S.C. § 1692a(4) (excepting assignees of debt from "[t]he term 'creditor'").[29]

### 2.    Hooper's "strict liability" argument misconstrues the law.

Whether in regard to his "strict liability" argument or otherwise, Hooper fails to cite any case law standing for the proposition that a debt collector violates the FDCPA by relying upon an underlying default judgment order that later is set aside by the state court.  By contrast, Midland has cited this Court to the directly on-point case of *Rodrigo v. Barclays Bank Delaware*, No. 16-cv-808-JAH (JMA), 2017 WL 1155373 (S.D. Cal. Mar. 27, 2017),[30] in which the federal court dismissed the plaintiff-debtor's FDCPA claims—even though they arose out of a state court

---

[29] Finally, Hooper's citations to the cases of *Janetos v. Fulton Friedman & Gullace, L.L.P.*, 825 F.3d 317 (7th Cir. 2016), *Thompson v. Resurgent Capital Services, L.P.*, No. 2:12-cv-01018-JEO, 2015 WL 1486974 (N.D. Ala. Mar. 31, 2015), and *Pollice v. National Tax Funding, L.P.*, 225 F.3d 379 (3d Cir. 2000) fail to offer any meaningful support to Hooper's stated position. *See* Doc. 43 at p. 15.

First and foremost, none of these cases even purports to hold that a debt collector may be found liable under the FDCPA by relying on a signed and attested return of service form or a default judgment order duly entered by the state court.  Moreover, in *Janetos*, the Seventh Circuit simply found that the defendant-creditor could be held liable under the FDCPA where its collection law firm sent a collection letter to the plaintiff-debtor that failed to disclose the creditor's name, and that an agency relationship can exist between a debt collector and its contractor for purposes of FDCPA liability. *See* 825 F.3d at 321-22.  In *Thompson*, this Court dismissed all of the plaintiff-debtor's claims against a defendant-debt collector except for a FDCPA claim based on the defendant's alleged oral representation to the plaintiff that "'[e]ven though [the debt was] out of [the] statute [of limitations], it's still a collectible debt[.]'"  2015 WL 1486974 at *17 (quoting the record) (first bracketed text supplied by court).  And in *Pollice*, the Third Circuit examined whether the plaintiff-homeowners' delinquent property taxes, water bills, and sewer bills constitute "debts" under the FDCPA and whether the defendant-limited partnership engaged in efforts to collect those outstanding bills constituted a "debt collector" under the FDCPA.  *See* 225 F.3d at 400-06.  In other words, *Janetos*, *Thompson*, and *Pollice* are readily distinguishable from the case at bar.

[30] *See* Doc. 39 at pp. 30-32; Doc. 44 at pp. 12-14.

8

collection action wherein the state court had set aside the previously entered default judgment based on the debtor's argument that "she was **never personally served with the summons and complaint**."  2017 WL 1155373 at *2; *see id.* at *6-7.[31]

In rejecting the plaintiff-debtor's FDCPA claims, the *Rodrigo* court held that "even if [it had] found that [the defendant-collection law firm], through its registered process server, failed to serve the correct individual, . . . that finding . . . would not support the inference that [the defendant] acted purposefully to procure proof of service **in bad faith**, and file an allegedly false proof of service in violation of the FDCPA."  2017 WL 1155373 at *7 (emphasis added).  Notably, Hooper devotes one sentence—and only one sentence—of his twenty-five page responsive brief to *Rodrigo*: "Midland then cites this Court to a non-binding District Court opinion out of the Southern District of California."[32]   In other words, **Hooper does not even attempt to dispute the palpable instructiveness of the *Rodrigo* opinion**.

In any event, accepting Hooper's "strict liability" argument would mean that a debt collector automatically violates the FDCPA whenever it relies on a signed and attested return of service form and/or a duly entered court order granting a default judgment when pursuing a default judgment and/or a garnishment proceeding that subsequently is set aside or released.  That is not the law; by comparison, simply

---

[31] *See also* Doc. 44 at pp. 12-14 (providing a more thorough discussion of *Rodrigo*).

[32] Doc. 43 at p. 13.

because the state court later ruled that Midland Funding did not prove the merits of its collection case by a preponderance of the evidence does not mean either that Hooper never actually owed the subject debt or that Midland violated the FDCPA. *See, e.g.*, *Hamilton v. Midland Funding LLC*, No. 2:14-cv-02008-AKK, 2017 WL 394839, at *4-5 (N.D. Ala. Jan. 30, 2017) (**rejecting plaintiff-debtor's argument "that the state court judgment in her favor means that Midland did not have a legal right to the debt"** and holding that "no legal basis exists for the contention that losing a collections suit in state court means that the debt collector had no legal basis to file the suit or **that it is automatically exposed to FDCPA liability**") (granting summary judgment in favor of the defendant-debt collector) (emphases added);[33] *Rodrigo*, 2017 WL 1155373 at *7.[34]  Hooper's section 1692e arguments fall flat, and Midland's motion for summary judgment is due to be granted.

## II. The doctrine of collateral estoppel does not apply.[35]

Hooper additionally contends that Midland "should be collaterally estopped from presenting argument or evidence that [Hooper] was actually served with the

---

[33] Although cited repeatedly throughout Midland's summary judgment brief (including, without limitation, in Part II of the "Argument and Citations to Authority" section) (*see* Doc. 39 at p. 30; *see also id.* at pp. 21-26), Hooper's responsive brief completely ignores the *Hamilton* case.  *Compare* Doc. 43.

[34] *See also Heintz*, 514 U.S. at 296 (recognizing that an unsuccessful collection action does not automatically violate the FDCPA).

[35] Midland adopts and incorporates herein the respective arguments and averments set forth in its prior Response in Opposition to Plaintiff's Motion to Exclude (*see* Doc. 20) and Sur-Reply to Plaintiff's Motion to Exclude (*see* Doc. 26).

underlying collection lawsuit[.]"[36]   Again, though, just because the state court ultimately decided to set aside the default judgment does not mean that Midland somehow violated the FDCPA—and it certainly does not preclude Midland from offering evidence in defense of Hooper's FDCPA allegations.  *Cf., e.g.*, *Hamilton*, 2017 WL 394839 at *4-5; *Rodrigo*, 2017 WL 1155373 at *2, 6-7 (dismissing the debtor's FDCPA claims even though they arose out of an underlying state court collection action wherein **the debt collector had unsuccessfully opposed the debtor's motion to set aside the default judgment**).[37]

Moreover, Hooper's claim that "[t]he only argument advanced by [him to the state court] in support of setting aside the default was that he was not served with the [collection] complaint"[38] is inaccurate.  Rather, Hooper argued to the state small claims court that it should set aside the default for two reasons: 1) Midland Funding allegedly could not meet its burden of proof to establish proper service; and 2) the Alabama judiciary generally disfavors default judgments.[39]  In fact, the state small claims court's subsequent order granting Hooper's motion to set aside the default mentioned **nothing whatsoever** about whether or not Hooper had been properly

---

[36] Doc. 43 at p. 17; *see id.* at pp. 18-20.

[37] *See also Heintz*, 514 U.S. at 296 (determining that an unsuccessful collection action does not automatically run afoul of the FDCPA).

[38] Doc. 43 at p. 17 (emphasis omitted).

[39] *See* Doc. 18-5 at pp. 2-5.

11

served.[40]  In turn, Alabama Rule of Civil Procedure 60 provides several reasons for which a state court may opt to set aside a default judgment, including but not limited to "mistake, inadvertence, surprise, or excusable neglect," or because it would be inequitable "that the judgment should have prospective application," or even for "**any other reason justifying relief**."  ALA. R. CIV. P. 60(b) (emphasis added).[41]

Hooper fails to cite a single case standing for the proposition that Midland here is collaterally estopped from "presenting argument or evidence" relating to the state court's decision to set aside the underlying default judgment[42]—his "collateral estoppel" argument is a textbook red-herring.

III.    **The *Rooker-Feldman* doctrine does not provide a basis on which to deny Midland's motion for summary judgment.[43]**

Hooper further argues that Midland's summary judgment motion runs afoul of the *Rooker-Feldman* doctrine by supposedly inviting this Court to discard the state small claims court's order setting aside the default.[44]  However, Hooper fails to support his *Rooker-Feldman* argument with any case law even remotely analogous

---

[40] *See* Doc. 38-11 at p. 2.

[41] *See also, e.g.*, *Storage Equities, Inc. v. Kidd*, 579 So. 2d 605, 607 (Ala. 1991) (noting that Alabama Rule of Civil Procedure 55 "contemplates a liberal exercise of the trial court's discretion in favor of setting aside default judgments").

[42] *Compare* Doc. 43 at pp. 16-20.

[43] Midland adopts and incorporates herein the relevant arguments and averments set forth in its prior Response in Opposition to Plaintiff's Motion for Partial Summary Judgment.  *See* Doc. 44 at pp. 16-18.

[44] *See* Doc. 43 at pp. 20-23.

to the facts of this case.[45]   And as Midland has explained previously, Midland's motion for summary judgment does not depend upon this Court concluding that Midland actually effected service of its collection lawsuit upon Hooper.[46]  Even if it did, however, it still would not implicate the *Rooker-Feldman* doctrine.

"[T]he *Rooker-Feldman* doctrine is a narrow doctrine that only applies to an attempt to appeal a state court judgment." *Vasquez v. YII Shipping Co., Ltd.*, 692 F.3d 1192, 1195 (11th Cir. 2012).  The doctrine "is confined to cases that . . . were 'brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and *inviting district court review and rejection of those judgments*.'" *Id.* at 1195-96 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)) (emphasis supplied by court).  Here, Midland did not bring the case at bar, and Midland is not inviting this Court to resuscitate the default judgment or Midland's ability to collect the sued-upon debt from Hooper—rather, Midland is asking this Court merely to consider Midland's submitted evidentiary materials that "belie [Hooper]'s contention that Midland filed a frivolous [return of service form or motion for default judgment]." *Hamilton*, 2017 WL 394839 at *4.  Simply put, the *Rooker-Feldman* doctrine has no applicability to Midland's summary judgment

---

[45] *Compare id.* at pp. 20-23.

[46] *See, e.g.*, Doc. 39 at pp. 21-32; Doc. 44 at pp. 4-15.

motion.  *See, e.g.*, *Vasquez*, 692 F.3d at 1195-96; *cf., e.g.*, *Hamilton*, 2017 WL 394839 at *4-5; *Rodrigo*, 2017 WL 1155373 at *2, 6-7.

## IV.   Hooper's argument that there exists a genuine issue of material fact as to whether he was served with Midland Funding's collection lawsuit is not supported by any authority and otherwise misses the mark.

Lastly, Hooper argues that "whether or not Midland served [Hooper] with the collection lawsuit is a genuine issue of material fact that can only be decided by a jury."[47]  Hooper, however, fails to adorn his argument with any supporting legal authority—much less any case law.[48]  As such, this Court need not consider this unsupported argument of Hooper.  *See, e.g.*, *Bahamas Sales Assoc., LLC v. Byers*, No. 3:08-cv-1012-J-32JRK, 2017 WL 3782804, *12, n.30 (M.D. Fla. Aug. 31, 2017) (granting summary judgment in favor of defendants on plaintiff's RICO claims because, in part, "[p]laintiffs cite no case law in support of their arguments regarding a purported pattern of racketeering").

Hooper's final argument fails for an additional—and perhaps more fundamental—reason.  The question at issue is not whether Hooper actually was served with the collection lawsuit; rather, the central question is whether Midland "procure[d] proof of service in bad faith, and file[d] an allegedly false proof of service in violation of the FDCPA."  *Rodrigo*, 2017 WL 1155373 at *7.  At this

---

[47] Doc. 43 at p. 23; *see id.* at p. 24.

[48] *Compare* Doc. 43 at pp. 23-24.

summary judgment stage, Hooper's conclusory allegations need not be taken as true, and the undisputed evidence shows that Midland filed the duly signed and attested return of service form in good faith, moved for default judgment in good faith, and relied in good faith on the state court's order of default when instituting the garnishment proceeding.[49]  In sum, Midland has negated an essential element of Hooper's FDCPA claim, and Midland's motion for summary judgment should be granted.  *See, e.g.*, *Hamilton*, 2017 WL 394839 at *4-5; *Rodrigo*, 2017 WL 1155373 at *2, 6-7; *see also Krawczyk v. Centurion Capital Corp.*, No. 06-C-6273, 2009 WL 395458, *10 (N.D. Ill. Feb. 18, 2009) (rejecting the plaintiff-debtor's FDCPA claims because the defendant-debt collector "had a good faith basis for pursuing its collection action in state court").[50]

## Conclusion

Pursuant to Federal Rule of Civil Procedure 56 and in accord with the above, Midland respectfully requests that this Court enter an order granting Midland's motion for summary judgment.

---

[49] *See, e.g.*, Doc. 38-1 at p. 21 (Hooper Dep. 78:1-19); Doc. 38-5 at pp. 5-7, ¶¶ 10-14; Doc. 38-7 at p. 4, ¶¶ 6-7; *id.* at pp. 9, 11, 13, 15; Doc. 38-8 at p. 3, ¶¶ 3-4.

[50] *See also Vance v. Portfolio Recovery Assocs., LLC*, No. 14 C 3641, 2016 WL 1247469, *15-16 (N.D. Ill. March 30, 2016) ("Here, the court finds at a minimum that no reasonable jury would conclude from this evidence that defendants **knew or should have known** they could not prove their case.  As such, there is no triable issue of fact.") (emphasis added).

Date: January 28, 2021

*/s/ Thomas R. DeBray, Jr.*
One of the Attorneys for Defendants

**OF COUNSEL:**

Jason B. Tompkins
Thomas R. DeBray, Jr.
Balch & Bingham LLP
P.O. Box 306
Birmingham, Alabama 35201-0306

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been filed on this the 28th day of January, 2021, via CM/ECF, which will electronically notify the following counsel of record:

John C. Hubbard
JOHN C. HUBBARD, LLC
P.O. Box 953
Birmingham, Alabama 35201

W. Whitney Seals
COCHURN & SEALS, LLC
P.O. Box 10448
Birmingham, Alabama 35202-0448

*/s/ Thomas R. DeBray, Jr.*
Of Counsel