FILED
2021 Jul-30  PM 12:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| COLBY HOOPER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 2:19-cv-01601-HNJ |
| | ) | |
| MIDLAND FUNDING, LLC, et al. | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This case proceeds before the court on Defendants Midland Funding, LLC and

Midland Credit Management, Inc.'s Motion for Summary Judgment, (doc. 34), as well

as Plaintiff Colby Hooper's Motion for Partial Summary Judgment, (doc. 33), and

Motion to Compel Discovery and Motion for Sanctions.  (Doc. 28).  Plaintiff Colby

Hooper claims Defendants Midland Funding, LLC and Midland Credit Management,

Inc. engaged in abusive, deceptive, and unfair debt collection practices in violation of

the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*, and Alabama common

law.

Hooper bases his claims upon Midland Funding, LLC's alleged failure to effect

service of process of the complaint and summons upon him in a prior state court

collection lawsuit it initiated against him.[1]  Hooper contends Midland Funding, LLC filed a false proof of service in the collection action, which enabled it to obtain a default judgment and ultimately garnish his wages.

Based upon the evidence of record, Hooper fails to sustain a genuine issue of material fact whether Midland Funding, LLC and Midland Credit Management, Inc. may incur liability for filing the alleged false proof of service.   Therefore, pursuant to the following discussion, the court **GRANTS** Midland Funding, LLC and Midland Credit Management, Inc.'s Motion for Summary Judgment, and **DENIES** Hooper's Motion for Partial Summary Judgment.   The court further **DENIES AS MOOT** Hooper's Motion to Compel Discovery and Motion for Sanctions.

### STANDARD OF REVIEW

Pursuant to the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. Rule 56(a).  The party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a

---

[1] Hooper also based his claims upon Midland Funding, LLC allegedly initiating the collection lawsuit "without any intention of proving the claims it allege[d]."  (Doc. 1 ¶ 23).  As elaborated below, however, Hooper "voluntarily concede[d] to the dismissal" of the claims predicated on this theory, including his state law claims. (Doc. 43 at 2).

genuine issue of material fact.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

If the movant sustains its burden, a non-moving party demonstrates a genuine issue of material fact by producing evidence by which a reasonable fact-finder could return a verdict in its favor.  *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (citation omitted).   The non-movant sustains this burden by demonstrating "that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion."  *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993).  In the alternative, the non-movant may "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency."  *Id.* at 1116–17; *see also Doe v. Drummond Co.*, 782 F.3d 576, 603–04 (11th Cir. 2015), *cert. denied*, 136 S. Ct. 1168 (2016).

The "court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."   *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citations omitted).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  "Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe."  *Reeves*, 530 U.S. at 151 (citation omitted).  "That is, the court should give credence to the evidence favoring the nonmovant as well as that

'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *Id.* (citation omitted).[2]

Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily

---

[2] Typically, "the mere fact that [a] witness is interested in the result of [a] suit is deemed sufficient to require the credibility of [the witness's] testimony to be submitted to the jury as a question of fact." *Sartor v. Ark. Nat. Gas Corp.*, 321 U.S. 620, 628 (1944) (quoting *Sonnenthe il v. Christian Moerlein Brewing Co.*, 172 U.S. 401, 408 (1899)). Nevertheless, the court may consider the uncontradicted and unimpeached testimony of such interested witnesses when "no reasonable point of view" tarnishes its veracity. *Chesapeake & O. Ry. Co. v. Martin*, 283 U.S. 209, 216 (1931); *see also Hibiscus Assocs. Ltd. v. Bd. of Trs. of Policemen & Firemen Ret. Sys. of City of Detroit*, 50 F.3d 908, 921 (11th Cir. 1995) (Judgment as a matter of law is appropriate where the uncontroverted testimony of an interested witness is inherently plausible and corroborated by other evidence.) (citing *Brown v. Ford Motor Co.*, 479 F.2d 521, 523 (5th Cir. 1973)). Such evidence strictly manifests as incontrovertible "by proof or circumstances, directly or inferentially"; indeed, "it is difficult to see why, if inaccurate, [such evidence] readily could not have been" contradicted. *Martin*, 283 U.S. at 216; *see also Quinn v. Sw. Wood Prod., Inc.*, 597 F.2d 1018, 1024 (5th Cir. 1979) ("[I]t has been held that such testimony [of interested witnesses], even by an employee of a party, must be taken as true where it was candid, the witness was not impeached, his credibility was not questioned, and his testimony was not controverted although, if inaccurate, it could readily have been shown to be so.") (citing *Martin*, 283 U.S. 209; *Texas Co. v. Hood*, 161 F.2d 618 (5th Cir.), *cert. denied*, 332 U.S. 829 (1947)); *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 272 (3d Cir. 2007) ("The fact is that in considering a motion for summary judgment the court should believe uncontradicted testimony unless it is inherently implausible[,] even if the testimony is that of an interested witness."); *Traylor v. Brown*, 295 F.3d 783, 791 (7th Cir. 2002) ("We do not interpret the quoted language so broadly as to require a court to ignore the uncontroverted testimony of company employees."); *Wilcox v. State Farm Mut. Auto. Ins. Co.*, 253 F.3d 1069, 1071 (8th Cir. 2001) (Even [if an employee's] affidavit [could] nominally fall within *Reeves*, "where [the plaintiff] was given a clear opportunity to contradict [the defense] affidavit but did not, it would not be obvious error to include the affidavit's contents in the factual mix relevant to summary judgment.").

renders all other facts immaterial." *Id.* at 322–23.  In addition, a movant may prevail on summary judgment by submitting evidence "*negating* [an] opponent's claim," that is, by producing materials disproving an essential element of a non-movant's claim or defense.  *Id.* at 323 (emphasis in original).

There exists no issue for trial unless the nonmoving party submits evidence sufficient to merit a jury verdict in its favor; if the evidence is merely colorable or is not significantly probative, summary judgment may be granted.  *Anderson*, 477 U.S. at 249.  The movant merits summary judgment if the governing law on the claims or defenses commands one reasonable conclusion, *id.* at 250, but the court should deny summary judgment if reasonable jurors "could return a verdict for the nonmoving party."  *Id.* at 248.  That is, a court should preserve a case for trial if there exists "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Id.* at 249.

## BACKGROUND

In September 2013, Midland Funding, LLC ("Midland Funding") purchased from GE Capital Retail Bank a pool of charged-off accounts containing a credit card account Hooper had maintained.[3]  (Doc. 38-2 at 2–3, 9, 14).  Hooper remitted to Midland Funding two payments on his account in April and May 2016.  (*Id.* at 55).  In February 2017, Midland Funding retained the law firm Moxley & Associates, LLC ("Moxley") to collect the balance of Hooper's account.  (Doc. 38-5 at 3).  On May 10,

---

[3] Midland Funding employed Midland Credit Management, Inc. ("MCM") to service the purchased accounts.  (Richmond Dep. at 12, 11. 1–5).

2017, Moxley filed a complaint on behalf of Midland against Hooper in the Circuit Court of Jefferson County, Alabama, alleging claims for account stated and breach of contract.[4]  (Doc. 38-6 at 2–3).

On June 28, 2017, Midland Funding filed a service return form representing that private process server Hannah VanSlambrouck[5] purportedly served a copy of the complaint and summons upon Hooper at his home address on May 26, 2017.[6]  (Doc. 36-24).  The form depicts an address and telephone number beneath Hooper's name, which Hooper affirmed reflect his home address and cellular telephone number.  (*Id.*;

---

[4] Moxley "attempted to collect on [Hooper's account] short of filing [collection lawsuit]."  (Doc. 38-5 ¶ 7).

[5] VanSlam, Inc. ("VanSlam") employed VanSlambrouck as a private process server during the pertinent period.  (Doc. 38-8 at 2).  VanSlam constitutes a "professional process service company," (doc. 38-7 at 2), who Moxley retained to serve Midland Funding's complaint upon Hooper, and whose services Moxley "has utilized . . . for years."  (Doc. 38-5 at 5).

MCM maintained a "Firm Manual," effective May 1, 2017, delineating policies governing the conduct of law firms MCM retains for collection lawsuits.  (Richmond Dep. at 58, ll. 22–23; 119, ll. 4–23).  The Firm Manual states, in pertinent part, that all law firms "shall abide by, and conduct all of its activities in a manner consistent with" the FDCPA.  (Doc. 38-15 at 20).  In addition, pursuant to the Firm Manual, law firms that retain private process servers "must only engage reputable process servers who . . . [a]re in good standing with applicable trade associations; . . . [a]re in compliance with applicable licensing requirements; and . . . [c]onform to all legal requirements concerning the service of process."  (*Id.* at 7).  The Firm Manual further provides:

> [Law firms] must ensure that process servers . . . prepare and file accurate proofs of service.  Should a [law firm] become aware of any circumstance under which a process server has prepared and/or filed a false proof of service, the [law firm] must immediately notify [a manager] and must assist in taking any necessary remedial action.

(*Id.*)

[6] The return on service portrays a check mark next to the statement, "I certify that I personally delivered a copy of the summons and Statement of Claim (Complaint) to Colby Hooper," followed by VanSlambrouck's handprinted name and signature.  (Doc. 36-24).

Hooper Dep. at 75, ll. 20–22).   Beneath Hooper's name, address, and telephone number, the service return form portrays a signature acknowledging receipt of service; however, it lacks a printed name corresponding to the signature.  (Doc. 36-24).  Hooper testified the signature "[l]ooks like [his] signature," and "is shaped like [his] signature," though he avers he never received or signed the form, and never received a copy of the complaint and summons.  (Hooper Dep. at 74, ll. 12, 19–20; doc. 1 ¶ 11).

When asked whether Hooper had "any reason to believe that Midland [Funding] or anyone on behalf of Midland [Funding] . . . somehow added [his] signature" to the service return form, Hooper responded, "Yes. . . . I know how easy that would be to do.  I'm a graphic artist."  (Hooper Dep. at 76, ll. 21–23; 77, ll. 4–8).  Hooper did not know whether Midland Funding possessed his signature prior to filing the service return form, and he could not recall ever furnishing Midland Funding a document containing his signature.  (*Id.* at 77, ll. 9–16).

When asked whether he believed Midland Funding "knew or should have known that [he] [allegedly] did not actually sign" the service return form and allegedly did not receive service of process, Hooper responded, "I don't know. . . . I don't know what [it] knew or what [it] did not know."  (*Id.* at 78, ll. 2–10).  When asked a second time whether he believed Midland Funding should have known he allegedly did not sign the service return form and receive service of process, Hooper responded, "No."[7]  (*Id.* at

---

[7] The pertinent portion of Hooper's deposition reads:

78, ll. 11–19).  Hooper stated he "ha[d] no idea" how his signature "made it onto" the service return form.  (*Id.* at 75, ll. 11–16).

    In her Affidavit, VanSlambrouck averred she "personally served the court summons and the Complaint filed by [Midland Funding] against Colby Hooper . . . upon Mr. Hooper at his residence."  (Doc. 38-8 ¶ 3).  VanSlambrouck

---

[Defense counsel:]  "Do you believe [Midland Funding] should have known that you didn't actually – that that is not actually your signature, that you didn't actually get served?"

[Hooper's counsel:] "Object to the form."

[Hooper:] "Do I believe they should have known?"

[Defense counsel:]  "Yes."

[Hooper:] "No."

(Hooper Dep. at 78, ll. 11–14).

Hooper beseeches the court to sustain the foregoing objection and disregard his response, "No," on the grounds that defense counsel posed "an improper compound question" and "attempt[ed] to obtain evidence regarding whether or not [Hooper] signed the return of service" in violation of the collateral estoppel and *Rooker-Feldman* doctrines.  (Doc. 43 at 8 n.3).  The court declines Hooper's entreaty.

First, counsel did not pose an improper compound question because the question did not "simultaneously pose[] more than one inquiry and call[] for more than one answer."  28 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, , FEDERAL PRACTICE AND PROCEDURE § 6164.  Although counsel asked Hooper whether he believed Midland Funding should have known he allegedly did not sign the service return form and that he allegedly did not receive service of process, the latter inquiry subsumes the former and eliminates any meaningful distinction between them. Furthermore, Hooper addressed any perceived ambiguity in the question by clarifying, "Do I believe they should have known?" and he proceeded to provide a clear answer, "No."  Hooper's testimony thus does not warrant striking.  *See id.* ("Where a compound question has been posed and answered, the court may require that the answer be clarified so as to eliminate confusion. But where the answer's content or context makes its meaning clear, no such clarification is needed.");  FEDERAL TRIAL OBJECTIONS § C40 ("A multiple or compound question presents two or more questions within a single question," and warrants objection "because the answer usually will be ambiguous.").  Further, as elaborated more fully below, neither the collateral estoppel doctrine nor the *Rooker-Feldman* doctrine bears applicability to Hooper's claim.  The court thus overrules Hooper's objection.

averred Hooper "identified and otherwise demonstrated himself to be Mr. Hooper when [she] served the court summons and Midland Funding's Complaint upon him at his residence." (*Id.*)   According to VanSlambrouck, "[i]n serving the summons and Complaint upon Mr. Hooper, [she] asked [him] to sign for his receipt of service, and [he] indeed did sign for his receipt of service." (*Id.* ¶ 4).  She further stated she "likewise signed and otherwise [completed] the 'Return on Service' section of the service return form." (*Id.*)   VanSlambrouck appended to her Affidavit a photograph of a man, who she averred constitutes a photograph of Hooper and "depicts the individual on whom [she] personally served the court summons and Midland Funding's Complaint on May 26, 2017." (*Id.* ¶ 5).

On June 29, 2017, after Hooper failed to file a responsive pleading to its complaint, Midland Funding filed a request for the entry of a default judgment.[8]  (Doc. 36-25).   On July 3, 2017, the district court granted Midland Funding's request and entered a default judgment against Hooper in the amount of $1,410, the principal balance due on his account.  (Doc. 38-6 at 57).   On April 10, 2019, upon Midland Funding's request, the Clerk of Court issued a writ of garnishment against Hooper's employer. (Doc. 38-12 at 10).  On May 1, 2019, Midland Funding filed a service return form certifying that Elias Banales "personally delivered a copy of" the process of

---

[8] Midland "rel[ied] on Moxley" to manage the lawsuit and evaluate the service return form.  (Richmond Dep. at 96, ll. 3–8; 139, ll. 2–7).  According to Moxley, it believed Hooper received service of process based upon the executed service return form. (Doc. 38-5 at 6).

garnishment upon Hooper at his home address.[9]  (Doc. 36-29).  Hooper testified he could not recall whether he signed the return on service for the process of garnishment, but he affirmed it portrayed his signature and he did not dispute he signed the return. (Hooper Dep. at 93, ll. 8–16).

According to Hooper, he did not discover the existence of Midland Funding's collection action and the writ of garnishment until his employer approached him at work and notified him it would garnish his wages.  (Hooper Dep. at 106, ll. 12–15; 108, ll. 1–3; doc. 36-28 at 1).  Hooper thereafter retained counsel, and, on April 18, 2019, he filed a motion to release the garnishment and to set aside the default judgment pursuant to Alabama Rule of Civil Procedure 60(b).[10]  (Doc. 36-28).  Hooper's motion urged that Rule 60(b) "allows for a judgment to be set aside if it is void and if there is any reason

---

[9] VanSlam employed Elias Banales as a process-server during the pertinent period. (385-7 at 5–6).

[10] Hooper's motion cites only to Alabama Rule of Civil Procedure 60(dc).  Alabama Rule of Civil Procedure 60(dc) provides Alabama Rule of Civil Procedure 60 "applies in the district courts."  Ala R. Civ. P. 60(dc).  Rule 60 provides, in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Ala. R. Civ. P. 60(b).  Because Rule 60(dc) extends the application of Rule 60 to the district courts, and a motion pursuant to Rule 60(b) constitutes the vehicle for setting aside "a final judgment, order, or proceeding", *id.*, Hooper's motion to release the garnishment and to set aside the default judgment arose under Rule 60(b).

justifying relief from the operation of the judgment." (*Id.* at 1–2).  Hooper maintained the default judgment entered against him was void, "as he was never served with the Complaint." (*Id.* at 2).

On May 20, 2019, the state district court convened a hearing on Hooper's motion to release the garnishment and to set aside the default judgment.  (Doc. 38-11). Hooper did not testify during the hearing, and he does not recall whether either party presented any arguments or attempted to offer any evidence to the court.  (Hooper Dep. at 82, ll. 8–10; 85, ll. 4–6).  According to Hooper, "not a lot was said and not a lot was fought" during the hearing, and it "ended abruptly." (*Id.* at 83, ll. 3–5).   The state court issued an Order the day of the hearing granting Hooper's motion.  (Doc. 38-11). The state court's Order states, in relevant part:  "This matter came before the Court for hearing . . . on [Hooper's] Motion to Release Garnishment and to Set Aside Default Judgment.   Counsel for all parties appeared as did [Hooper].   [Hooper's] Motion to Release Garnishment and to Set Aside Default Judgment is hereby GRANTED."[11] (*Id.*)

On May 21, 2019, Hooper filed an answer to Midland Funding's complaint denying liability for an account stated or a breach of contract.  (Doc. 36-30).  On July 22, 2019, the state court convened a bench trial and issued a judgment in Hooper's favor.  (Doc. 36-31).

---

[11] Pursuant to the state court's Order, Midland Funding and the Clerk of Court returned to Hooper the garnished sums.  (Doc. 38-11; Hooper Dep. at 140, ll. 1–9).

On September 30, 2019, Hooper filed the Complaint in this action against Midland Funding and MCM (collectively, "Midland").[12]  (Doc. 1).  Hooper asserted claims against Midland pursuant to the FDCPA for allegedly

> fil[ing] multitudes of lawsuits in Alabama, such as the Small Claims lawsuit [against Hooper], in an effort to either secure a default against Alabama consumers who fail to answer the bogus complaints Midland files[,] or to coerce a settlement or consent judgment from consumers at the courthouse before trial when [Midland] knows it has no witnesses and no competent evidence to prove its claims.

(*Id.* ¶¶ 24, 26–29).  Hooper also alleged Midland violated the FDCPA by falsely representing it served the complaint and summons upon him in the state court collection action.  (*Id.* ¶¶ 10–11, 26–29).  Based upon Midland's alleged conduct, Hooper also asserted state law claims against Midland for negligence, recklessness and wantonness, malicious prosecution, and abuse of process.  (*Id.* ¶¶ 30–54).

## ANALYSIS

The instant motions test the viability of Hooper's claim, as elaborated in his summary judgment briefing,[13] that Midland violated 15 U.S.C. § 1692e(10) by falsely representing to the state court that it served a copy of the complaint and summons

---

[12] The court refers to Midland Funding and MCM collectively as "Midland" pursuant to the parties' usage.  In addition, consistent with the parties' parlance, the court refers to "Midland" when discussing the state court collection action, even though MCM did not constitute a party to the action.

[13] In his Complaint, Hooper generally alleged Midland effected "numerous and multiple violations of the FDCPA, . . . including, ***but not limited to***, 15 U.S.C. § 1692d[,] § 1692e[,] and § 1692f."  (Doc. 1 ¶ 27) (emphasis in original).  In briefing the instant summary judgment motions, Hooper specified he pursues his FDCPA claim pursuant to § 1692e(10).  (Docs. 33 & 43).

upon him.[14]  (Docs. 33 & 43).  Hooper contends Midland "filed a false service affidavit" in the state court action, and thereby employed a "false representation or deceptive means to collect or attempt to collect [a] debt" in violation of § 1692e(10).  § 1692e(10). Midland counters that it "reasonably relied upon the duly signed, attested, and signed Service Return form," which furnished a good-faith basis to believe that Hooper received service of the complaint and summons when it pursued the default judgment against him.  (Doc. 39 at 31).  According to Midland, therefore, the issue whether Hooper actually received service of process bears no relevance to his claim, as it reasonably believed he received service of process and obtained the default judgment in good faith.  (Doc. 45 at 14).

In rejoinder, Hooper urges Midland incurs liability pursuant to § 1692e(10) irrespective of its belief, knowledge, or intent, which fixes the issue whether he received service of process – or, more pertinent, whether Midland filed a falsified service return

---

[14] Midland's Motion for Summary Judgment beseeches the court to grant it summary judgment on each of Hooper's claims, (doc. 34), while Hooper's Motion for Partial Summary Judgment bids the court to grant him summary judgment on his § 1692e(10) claim only.  (Doc. 33).  In opposing Midland's Motion for Summary Judgment, Hooper stated he "attributes his damages to the wrongful garnishment that was issued because [Midland] filed a false service affidavit."  (Doc. 43 at 2).  Hooper thus "voluntarily concedes to the dismissal of his 'intent to prove' FDCPA claim and the state law claims he alleged in the Complaint."  (*Id.* at 2–3).  Hooper's § 1692e(10) claim thus constitutes "[t]he only claim that [he] continues to pursue."  (*Id.* at 3).  Based upon Hooper's representations, the court **GRANTS** Midland's Motion for Summary Judgment on Hooper's "intent to prove" FDCPA claim and his state law claims for negligence, recklessness and wantonness, malicious prosecution, and abuse of process; and **DISMISSES** these claims **WITH PREJUDICE**.

Further, because Hooper's Motion to Compel Discovery and Motion for Sanctions pertains to his abandoned "intent to prove" FDCPA claim, the court **DENIES AS MOOT** Hooper's Motion. (Doc. 28).

form – at the center of the instant dispute.[15]  To this end, Hooper contends that because the state court issued an order setting aside the default judgment, he necessarily determined Hooper did not receive service of process, and, concomitantly, the doctrine of collateral estoppel bars Midland from arguing otherwise.

As elaborated in the following discussion, the court agrees with Hooper that the issue whether Midland filed a falsified service return form, even if unknowingly, constitutes the pertinent inquiry in this case.   Nevertheless, based upon the circumstances of the state court proceeding, Hooper fails to establish the collateral estoppel doctrine bars the relitigation of this issue.   Further, after considering the evidence, a reasonable jury may not conclude Midland stands liable for filing the allegedly falsified service return form.

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e). Consistent with this purpose, the FDCPA prohibits a "debt collector"[16] from using

---

[15] The issue whether Hooper received service of process necessarily encompasses the issue whether Midland filed a falsified service return form, as under the circumstances the service return form may only portray a fabrication if Hooper did not receive service of process.

[16] Pursuant to § 1692a(6),

> [t]he term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection

"any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." § 1692e(10).  Courts construe the FDCPA's provisions "liberally . . . in favor of consumer debtors," as the statute is remedial in nature.[17]  *Hamilton v. Midland Funding LLC*, No. 2:14-cv-02008-AKK, 2017 U.S. Dist. LEXIS 12206, at *6–7 (N.D. Ala. Jan. 30, 2017).

---

of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6).  The parties do not dispute Midland constitutes a "debt collector" pursuant to the foregoing definition.

[17] In *Miljkovic v. Shafritz & Dinkin, P.A.*, 791 F.3d 1291 (11th Cir. 2015), the Eleventh Circuit ruled that the FDCPA encompasses "a debt-collector attorney's representations in court filings." *Miljkovic*, 791 F.3d at 1297.  *Miljkovic* thus supports the proposition – which Midland does not appear to dispute – that the FDCPA's proscription against the use of false or misleading representations contemplates the filing of false proof of service in a state court collection action.  *See Freeman v. ABC Legal Servs., Inc.*, 827 F. Supp. 2d 1065, 1075 (N.D. Cal. 2011) (the plaintiff stated a cognizable claim pursuant to § 1692e based upon her allegations the defendants engaged in "sewer service" by generating fraudulent proof of service filed in a state court collection action to obtain a default judgment); *accord Sykes v. Mel Harris & Assocs., LLC*, 757 F. Supp. 2d 413, 424 (S.D.N.Y. 2010); *see also Toohey v. Portfolio Recovery Assocs., LLC*, 2016 U.S. Dist. LEXIS 111534, at *21–23 (S.D.N.Y. Aug. 22, 2016) (the plaintiff stated a cognizable claim pursuant to § 1692e based upon her allegation the defendants submitted a falsified affidavit in support of a default judgment motion).

In addition, although the Eleventh Circuit generally applies the "least sophisticated consumer" standard to § 1692e(10) claims, which queries whether the debt collector's alleged misconduct would deceive or mislead the least sophisticated consumer, this standard bears no relevance to Hooper's claim.  *See Jeter v. Credit Bureau*, 760 F.2d 1168, 1175–77 (11th Cir. 1985) ("Under [§ 1692e(10)], we must consider whether the 'least sophisticated consumer' would be deceived by [the debt collector's] letters, *i.e.*, whether the letters were a 'deceptive means' to collect alleged debts . . . .").  The gravamen of Hooper's alleged injury does not concern the allegedly falsified service return form's misleading or deceptive effect upon him, nor would the "least sophisticated consumer" test aid the court in assessing whether a reasonable jury could conclude Midland stands liable for filing the form.  As elaborated more fully below, the viability of Hooper's claim hinges upon whether a reasonable jury could conclude Midland bears vicarious liability for an agent's alleged fabrication of the form, and assessing whether the alleged falsification would deceive the least sophisticated consumer would not assist in such determination.  The court thus will not employ the "least sophisticated consumer" standard, particularly as neither party invokes its application.  *See Landeros v. Pinnacle Recovery, Inc.*, 692 F. App'x 608, 613 (11th Cir. 2017) ("[T]he least sophisticated consumer standard will not apply to FDCPA claims in which the consumer's sophistication is irrelevant.") (citing *Jeter*, 760 F.2d at 1175); *Hsiao Yip v.*

At the outset, the court rejects Midland's argument that its good-faith reliance upon the "duly signed, attested, and filed" service return form renders immaterial the issue whether Hooper actually received service of process in the state court proceeding, and, consequently, whether the service return form portrayed a fabrication. (Doc. 39 at 31). Midland highlights that because Hooper does not dispute Midland lacked knowledge of the alleged falsity, and he does not contend it should have known he allegedly did not receive service of process, Hooper cannot establish Midland engaged "any false representation or deceptive means" to obtain the default judgment in pursuit of its debt collection efforts. § 1692e(10). Midland latches upon the decision in *Rodrigo v. Barclays Bank Delaware*, No. 16cv808-JAH (JMA), 2017 U.S. Dist. LEXIS 45977 (S.D. Cal. Mar. 27, 2017) to buttress its assertion that it did not contravene § 1692e(10) because "the record evidence 'does not support the inference that [Midland or its counsel] acted purposefully to procure proof of service in bad faith, and file an allegedly false proof of service.'" (Doc. 39 at 31–32) (alteration in original) (quoting *Rodrigo*,

---

*Dynamic Recovery Sols., LLC*, No. 1:18-CV-2586-WMR-JSA, 2019 U.S. Dist. LEXIS 191846, at *34 (N.D. Ga. June 18, 2019) ("The least sophisticated consumer standard generally does not apply to FDCPA claims . . . if the consumer's sophistication is irrelevant to the claim.") (citing *Jeter*, 760 F.2d at 1175); *Condon v. Global Credit & Collection Corp.*, No. 8:10-CV-1526-T-TGW, 2010 U.S. Dist. LEXIS 129343, at *16 (M.D. Fla. Dec. 6, 2010) (The "least sophisticated consumer" standard remained inapposite to the plaintiff's § 1692e(11) claim because the "dispositive issue . . . [did] not turn on the plaintiff's level of sophistication."); *c.f. Conde v. Webcollex, LLC*, 752 F. App'x 935, 937–38 (11th Cir. 2018) (The Court applied the "least sophisticated consumer" standard to assess whether the debt collector's collection letter addressed to the consumer violated § 1692e(10)); *accord Leonard v. Zwicker & Assocs., P.C.*, 713 F. App'x 879, 884 (11th Cir. 2017); *Caceres v. McCalla Raymer, LLC*, 755 F.3d 1299, 1304–05 (11th Cir. 2014).

2017 U.S. Dist. LEXIS 45977, at *20).  The circumstances of *Rodrigo* portray a pivotal factual distinction rendering it inapposite to the assessment at bar.

Like Hooper, the plaintiff in *Rodrigo* asserted an FDCPA claim against a debt collector and its counsel based upon a prior state court collection lawsuit the debt collector initiated against the plaintiff.  *Rodrigo*, 2017 U.S. Dist. LEXIS 45977, at *4. The debt collector filed "proof of service" of the complaint and summons in the state court proceeding, and thereafter obtained an entry of default.  *Id.* at *3.  The plaintiff filed a motion to vacate the entry of default, maintaining she never received service of process.  *Id.*  The state court granted her motion "and vacated entry of default without making any findings with respect to the legitimacy of proof of service."  *Id.*  In her subsequent federal court action, the plaintiff alleged the debt collector violated the FDCPA by "effectuat[ing] . . . fraudulent service" in the state court proceeding.  *Id.* The *Rodrigo* court dismissed the plaintiff's claim pursuant to Federal Rule of Civil Procedure 12(b)(6) because the complaint failed to plausibly depict the debt collector acted in "bad faith" when it filed proof of service and obtained the entry of default.  *Id.* at *17.

Crucially, however, unlike Hooper, the plaintiff in *Rodrigo* alleged the defendants "*knowingly*, *willfully*, and *intentionally*" engaged in fraudulent service of process.  *Id.* at *4 (emphases added) (alterations omitted).  Accordingly, the *Rodrigo* court determined the plaintiff's failure to plausibly allege the defendants "procured proof of service in bad faith" defeated her claim that the defendants purposefully effected fraudulent service

of process – "even if the Court found that [the debt collector's counsel], through its registered process server, failed to serve the correct individual." *Id.* at *17–20.

Contrary to Midland's suggestion, therefore, *Rodrigo* does not stand for the proposition that filing the allegedly falsified service return form violated § 1692e(10) only if Midland did so purposefully in bad faith. Rather, the court in *Rodrigo* simply determined the plaintiff's complaint failed to plausibly depict, *as she alleged*, that the defendants purposefully filed false proof of service. However, Hooper does not allege Midland purposefully or knowingly filed the allegedly false service return form. The court thus rejects Midland's contention that pursuant to the reasoning in *Rodrigo*, evidence that it filed the allegedly false service return form unknowingly and in good faith shields it from liability under § 1692e(10).

Indeed, "[t]he FDCPA does not ordinarily require proof of intentional violation," *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010) (citing 15 U.S.C. § 1692k), and it therefore "typically subjects debt collectors to liability even when violations are not knowing or intentional." *Owen v. I. C. Sys., Inc.*, 629 F.3d 1263, 1270 (11th Cir. 2011). The Eleventh Circuit thus describes the FDCPA as a "strict liability" statute. *See, e.g., Prescott v. Seterus, Inc.*, 635 F. App'x 640, 646 (11th Cir. 2015) (quoting *Owen*, 629 F.3d at 1270–71); *Crawford v. LVNV Funding, LLC*, 758 F.3d 1254, 1259 n.4 (11th Cir. 2014), *abrogated on other grounds by Midland Funding, LLC v. Johnson*, 137 S. Ct. 1407 (2017), *as stated in In re Soler Somohano*, 819 F. App'x 873 (2020); *LeBlanc*, 601 F.3d at 1190. Further, and most pertinent here, "[n]owhere in the language

of [§ 1692e(10)] is there any mention of an element of knowledge or intent." *Kaplan v. Assetcare, Inc.*, 88 F. Supp. 2d 1355, 1362 (S.D. Fla. 2000).  Consistent with the foregoing statutory principles, Midland's good faith bears no relevance upon the issue whether it may incur liability for filing the allegedly falsified service return form.[18]

Principles of agency law likewise render Midland's good faith inapposite to the instant assessment, as it may sustain vicarious liability for FDCPA violations "committed by others acting on [its] behalf." *Janetos v. Fulton Friedman & Gullace, LLP*,

---

[18] Midland does not assert the bona fide error affirmative defense pursuant to § 1692k(c).  *See Crawford v. LVNV Funding, LLC*, 758 F.3d 1254, 1259 n.4 ("[A] debt collector's knowledge and intent can be relevant" if it attempts to "avoid liability [pursuant to the bona fide error defense].") (citing § 1692k(c)); *see* § 1692k(c) ("A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.").  Nor does Midland invoke § 1692k(e), which provides that liability shall not ensue for "any act done or omitted in good faith in conformity with any advisory opinion of the Bureau [of Consumer Financial Protection]."  § 1692k(e).

Midland suggests the FDCPA operates as a "strict liability" statute only in certain factual scenarios. Midland highlights that in *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185 (11th Cir. 2010), for example, the Eleventh Circuit characterized the FDCPA as a "strict liability statute" when recognizing that "the defendant's failure to register as an 'out-of-state consumer collection agency' may support a cause of action under the FDCPA" – which conduct is not at issue here.  (Doc. 45 at 7) (quoting *LeBlanc*, 601 F.3d at 1197–98).  Midland likewise distinguishes *Owen v. I. C. Sys., Inc.*, 629 F.3d 1263 (11th Cir. 2011), in which the Eleventh Circuit described the "strict liability" nature of the FDCPA when assessing the alleged misrepresentations in the defendant's collection letters.  Although the factual circumstances of *LeBlanc* and *Owen* differ from the case at bar, Midland cites to no authority indicating that the FDCPA's "strict liability" construction turns upon the nature of a plaintiff's allegations, nor does the court discern the existence of any case in which the Eleventh Circuit has qualified the "strict liability" construction based upon the factual allegations at issue.  To the contrary, the Eleventh Circuit consistently recognizes that "[a] false representation in connection with the collection of a debt is sufficient to violate the [§ 1692e of the] FDCPA facially, even where no misleading or deception is claimed." *Bourff v. Rubin Lublin, LLC*, 674 F.3d 1238, 1241 (11th Cir. 2012).  The court thus declines Midland's entreaty to adopt a selective application of the FDCPA's "strict liability" construction. *See Bradshaw v. Collection Bureau of the Hudson Valley*, No. 2:09-cv-01149-SLB, 2010 U.S. Dist. LEXIS 156942, at *15 n.14 (N.D. Ala. Mar. 29, 2010) (The court rejected the defendants' contention that § 1692e requires a demonstration of an intentional violation because such an interpretation "would seemingly render meaningless . . . [§ 1692k(c)'s] 'bona fide error' affirmative defense.").

825 F.3d 317, 325 (7th Cir. 2016); *see Thompson v. Resurgent Cap. Servs., L.P.*, No. 2:12-cv-01018-JEO, 2015 U.S. Dist. LEXIS 41639, at *72 (N.D. Ala. Mar. 31, 2015) (the debt collector could incur vicarious liability for the alleged conduct of its agent); *accord Deutsche Bank Tr. Co. Ams. v. Garst*, 989 F. Supp. 2d 1194, 1202 (N.D. Ala. 2013); *see also Clark v. Cap. Credit & Collection Servs.*, 460 F.3d 1162, 1173 (9th Cir. 2005) ("[G]eneral principles of agency . . . form the basis of vicarious liability under the FDCPA."); *Brown v. Telecheck Servs.*, No. 1:13-cv-01593-JEC-RGV, 2013 U.S. Dist. LEXIS 204054, at *7–8 (N.D. Ga. Dec. 4, 2013) ("Vicarious liability under the FDCPA is derived from general principles of agency.").[19]  Therefore, Midland may stand vicariously liable for the actionable conduct of its agents, its own alleged good faith notwithstanding.

Indeed, as elaborated more fully below, because Hooper does not contend Midland itself falsified the service return form, engaged another to falsify the form, or knew it filed an allegedly falsified service return form, his § 1692e(10) claim must proceed on a theory of vicarious liability.  Thus, as indicated previously, the dispositive

---

[19] The Eleventh Circuit has not expressly endorsed a plaintiff's reliance upon agency principles to hold a principal vicariously liable for an agent's violations of the FDCPA.  In *Rivas v. Midland Funding, LLC*, 842 F. App'x 483 (11th Cir. 2021), the Eleventh Circuit acknowledged that other circuits "rely on agency principles and common law ideas about vicarious liability to support indirect liability for violations of the FDCPA."  *Rivas*, 842 F. App'x at 487.  However, because the appellant "expressly disclaimed any reliance on vicarious liability or agency principles," the Court did not express an opinion on the applicability of the vicarious liability theory in the FDCPA context.  *Id.*  Nonetheless, in *LeBlanc*, the Court applied state law principles of partnership liability to conclude that "partners of a debt collector limited partnership may be held vicariously liable for the partnership's conduct[,] . . . regardless of whether or not [the partners] are debt collectors, and whether or not [the partners] violated the FDCPA."  *LeBlanc*, 601 F.3d at 1201–02.  The Eleventh Circuit thus indicated the vicarious liability theory may represent a viable avenue for relief for a plaintiff who cannot prove a direct violation of the FDCPA.

issue concerns whether a reasonable jury could determine Midland bears vicarious liability for an agent's falsification of the service return form.  The court concludes it may not.

As an initial matter, Hooper fails to demonstrate that the state court's Order setting aside the default judgment bears preclusive effect pursuant to the collateral estoppel doctrine, such that it establishes, as a matter of law, that the service return form portrays a fabrication.  Alabama law imposes collateral estoppel if (1) an issue in a prior action was identical to the issue litigated in the present action; (2) the issue was actually litigated in the prior action; (3) resolution of the issue was necessary to the prior judgment; and (4) the same parties are involved in the two actions.  *Walker v. City of Huntsville*, 62 So. 3d 474, 487 (Ala. 2010).[20]  The party asserting collateral estoppel bears the burden of establishing each afore-cited element.  *Id.*  In addition, "the application of collateral estoppel is committed to the sound discretion of the district court."  *Deweese v. Palm Beach*, 688 F.2d 731, 734 (11th Cir. 1982) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979)).

Further, implicit in the afore-cited elements lies the principle that "[o]nly issues *actually decided* in a former action are subject to collateral estoppel."  *Lee L. Saad Constr. Co. v. DPF Architects, P.C.*, 851 So. 2d 507, 520 (Ala. 2002) (emphasis in original) (quoting

---

[20] "In considering whether to give preclusive effect to state-court judgments under . . . collateral estoppel, the federal court must apply the rendering state's law of preclusion."  *Cmty. State Bank v. Strong*, 651 F.3d 1241, 1263 (11th Cir. 2011).

*Leverette ex rel. Gilmore v. Leverette*, 479 So. 2d 1229, 1237 (Ala. 1985)).  A court may "actually decide" an issue "expressly or by necessary implication."  *White v. State*, 378 So. 2d 239, 244 (Ala. Crim. App 1979).  "A decision that does not mention the specific issue in question is too vague to afford issue preclusive effect. If there is no showing with regard to the issues that were actually decided, there is no issue preclusion." 18 Moore's Federal Practice – Civil § 132.03; *accord* 18 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 4420.

Hooper fails to satisfy the requirements of collateral estoppel because the record does not depict the state court actually decided the issue whether Hooper received service of process, which, as referenced previously, necessarily embraces the issue whether Midland filed a falsified service return form.  To recount, Hooper bid the state court to set aside the default judgment on the basis that "he was never served with the Complaint," (doc. 36-28 at 2), and, to be sure, the state court granted Hooper's entreaty.[21]  Crucially, however, the state court's Order contains no factual or legal findings, but merely states:  "This matter came before the Court for hearing . . . on [Hooper's] Motion to Release Garnishment and to Set Aside Default Judgment. Counsel for all parties appeared as did [Hooper].  [Hooper's] Motion to Release

---

[21] As elaborated previously, in his motion to set aside the default judgment, Hooper also argued that Alabama Rule of Civil Procedure 60 "allows for a judgment to be set aside if it is void and if there is any reason justifying relief from the operation of the judgment."  (Doc. 36-28 at 1–2).

Garnishment and to Set Aside Default Judgment is hereby GRANTED." (Doc. 38-11 at 2).

Based upon the language of the state court's Order, the court cannot discern the grounds upon which it set aside the default judgment, or if (and how) it resolved the issue whether Hooper received service of process.  Notably, according to Hooper, "not a lot was said and not a lot was fought" during the hearing, and it "ended abruptly." (Hooper Dep. at 83, ll. 3–5).  Further, the record does contain any evidence indicating the parties discussed the issue of service during the hearing.[22]  Accordingly, contrary to Hooper's suggestion, it is not "[clear]" that the state court "was convinced that [Hooper] was never served with the state court lawsuit." (Doc. 43 at 18).

Hooper urges that the failure to perfect service of process pursuant to Alabama law "deprives a court of jurisdiction and renders its judgment void." (*Id.* at 17) (quoting *Northbrook Indem. Co. v. Westgate, Ltd.*, 769 So. 2d 890, 893 (Ala. 2000)).  Accordingly, "[d]iscretion plays no part in determining whether a default judgment is void. 'If the judgment is valid, it must stand; if it is void, it must be set aside.'" (*Id.* at 18) (quoting *LVNV Funding, LLC v. Boyles*, 70 So. 3d 1221, 1227 (Ala. Civ. App. 2009)).  Pursuant to these principles, Hooper maintains, "[h]ad [the state court] held that [he] did in fact sign the return of service and was in fact served, the default judgment would not have been set aside." (*Id.*)

---

[22] As discussed previously, Hooper testified he could not recall whether either party presented any arguments or evidence during the hearing.  (Hooper Dep. at 82, ll. 8–10; 85, ll. 4–6).

But Hooper assumes precisely what the state court's Order fails to evince:  that he actually determined Hooper did not receive service of process and thus deemed the default judgment void.  Because the state court's Order does not portray *why* he set aside the default judgment, and the evidence does not illuminate what (if any) arguments the parties advanced during the hearing, the court cannot ascertain, even by necessary implication, which legal principles and factual issues his ruling embraces.  That is, a conclusion that Hooper did not receive service of process "is [not] obviously implied from [the state court's] holding," even if Hooper petitioned for the same.  *Wheeler v. First Ala. Bank*, 364 So. 2d 1190, 1200 (Ala. 1978); *see Grant v. Wesfam Rests., Inc.*, No. 5:10-cv-3457-TMP, 2013 U.S. Dist. LEXIS 13116, at *16–17 (N.D. Ala. Jan. 31, 2013) ("[I]t is not entirely clear precisely what issues were actually decided in the administrative proceedings. If it is not clear from the administrative record what issues were actually litigated and decided, collateral estoppel cannot operate. No evidence has been presented that the administrative hearing officer ever considered whether race discrimination was a reason for the termination of plaintiff's employment. No transcript of the telephonic hearing has been submitted. Thus, even if discriminatory animus was at issue in the administrative proceedings, that is not at all clear from the record, rendering collateral estoppel inappropriate.") (internal citations omitted); *Lee L. Saad Constr. Co.*, 851 So. 2d at 521 ("The director did not explain the rationale for his arbitration decisions, and he made no specific findings of fact. Instead, he merely entered the words 'Award' or 'No Award' next to each of the claims made by Saad

Construction and the Board. The mere entries of 'No Award' on Saad Construction's claims against the Board, which included allegations of misconduct by the appellees, does not necessitate a finding that the arbitrator resolved against Saad Construction its arguments concerning the appellees' alleged misconduct. The appellees have not met their burden of proving that the arbitrator actually decided that the appellees were not responsible for Saad Construction's damage or 'that resolution of the issue was necessary to the prior judgment.'").

Indeed, pursuant to Alabama Rule of Civil Procedure 60(b), a court may set aside a default judgment for "any . . . reason justifying relief from the operation of the judgment," Ala. R. Civ. P. 60(b)(6), and, as recounted previously, Hooper highlighted this discretionary rule in his motion to set aside the default judgment.  (Doc. 36-28 at 1–2) ("[Rule 60(b)] allows for a judgment to be set aside if it is void and if there is any reason justifying relief from the operation of the judgment.").  Accordingly, although Hooper contended "the judgment entered against him [was] void as he was never served with [Midland Funding's] Complaint," he also invoked the state court's discretionary authority to set aside the default judgment pursuant to Rule 60(b)(6).  Hooper's reference to Rule 60(b)(6) thus further obscures the basis for the state court's Order and mars the court's ability to deduce the grounds therefor.[23]  *See Amoco Prod. Co. v.*

---

[23] To be sure, Rule 60(b)(6) represents "an extraordinary remedy" employed "to cover unforeseen contingencies," and thus "will be allowed only in unique situations where a party can show exceptional circumstances sufficient to entitle him to relief."  *Nowlin v. Druid City Hosp. Bd.*, 475 So. 2d 469, 471 (Ala. 1985).  However, in his motion to set aside the default judgment, Hooper averred he "ha[d]

*White*, 453 So. 2d 358, 360 (Ala. 1984) ("[T]he [circuit court] decreed only that the . . . act was 'unconstitutional, invalid and unenforceable.' It did not state the grounds of its decision. Any of the four grounds alleged by the [the plaintiffs] in [the circuit court] could have supported the judgment, without any determination of the remaining grounds. Thus, we cannot say what issue was actually resolved in the [circuit court] case.").

In summary, Hooper fails to sustain his burden of establishing the state court actually decided the issue whether he received service of process, and, concomitantly, whether Midland filed a falsified service return form. Collateral estoppel thus does not preclude the parties from litigating this issue, and the court will assess the evidence pertaining thereto.[24]   *See Edgewater House Condo. Ass'n v. City of Fort Lauderdale*, 825 F.

---

primary custody of his four children," "[did] not have any accumulation of wages from paycheck to paycheck," and "use[d] all of his income per paycheck . . . to pay current expenses necessary to maintain himself and his family." (Doc. 36-28 at 2). Based upon Hooper's representations, the state court may well have determined Hooper satisfied the Rule 60(b)(6) standard and set aside the default judgment on that basis, its exacting burden notwithstanding. Yet this possibility simply illustrates the fundamental point: the record does not clearly depict what the state court contemplated when it set aside the default judgment.

[24] Hooper's contention that the *Rooker-Feldman* doctrine precludes the court from assessing the service issue stands likewise meritless. According to Hooper, "[b]y arguing . . . that [he] was actually served in the underlying Small Claims Court case, Midland attempts to have [the court] review" the state court's Order setting aside the default judgment in contravention of the *Rooker-Feldman* doctrine. (Doc. 43 at 20–21). The *Rooker-Feldman* doctrine, which remains "limited [in] scope," applies only to "those claims asserted by parties who have lost in state court and then ask the district court, ultimately, to review and reject a state court's judgments." *Target Media Partners v. Specialty Mktg. Corp.*, 881 F.3d 1279, 1285–86 (11th Cir. 2008); *see Lance v. Dennis*, 546 U.S. 459, 466 (2006) ("The doctrine applies only in 'limited circumstances,' where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court.") (internal citation omitted) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005)). Thus, "*Rooker-Feldman* is not simply preclusion by another name." *Lance*, 546 U.S. at 466.

App'x 658, 663 n.2 (11th Cir. 2020) ("[I]n general a federal court will not confer preclusive effect on a state court order where it is unclear what the state court actually decided.") (quoting *New Port Largo, Inc. v. Monroe County*, 95 F.3d 1084, 1090 n.6 (11th Cir. 1996)); *Mitchell v. Humana Hosp.-Shoals*, 942 F.2d 1581, 1584 (11th Cir. 1991) ("Because the state court did not specify the reasons for its decision, we cannot be certain if the court actually decided [the relevant issue sought to be precluded].") *French v. Jinright & Ryan, P.C. Architects*, 735 F.2d 433, 436 (11th Cir. 1984) ("An application of collateral estoppel must be premised on a clear determination of the issues litigated in the [prior] proceeding. Although the district court has demonstrated that the claims were similar, the record is not sufficient to show whether all [relevant issues] were . . . decided on the merits . . . .") *c.f. Land v. Glover*, 404 F. Supp. 2d 1335, 1338–39 (M.D. Ala. 2005) (based upon a prior administrative determination setting forth factual findings vis-à-vis the plaintiff's claims, collateral estoppel precluded relitigation of an issue decided therein).

After considering the evidence of record, a reasonable jury may not conclude Midland, or an agent who may properly subject Midland to vicarious liability, falsified

---

The *Rooker-Feldman* doctrine remains inapposite here, as it is Hooper (the state court winner) who initiated this action, and, as Midland (the state court loser) highlights, it "is not inviting [the Court] to resuscitate the default judgment." (Doc. 45 at 13). Indeed, Midland does not even invite the court to assess the issue whether Hooper received service of process, which it maintains bears no relevance to the dispute at bar given its alleged good-faith reliance upon the service return form. Contrary to Hooper's contention, therefore, this case does not implicate the *Rooker-Feldman* doctrine because it does not concern a state-court loser "complain[ing] of an injury caused by a state-court judgment." *Bates v. Harvey*, 518 F.3d 1233, 1241 (11th Cir. 2008).

the service return form.  First, as referenced previously, Hooper's claim must proceed

on a theory of vicarious liability, as he effectively conceded Midland itself did not engage

in any wrongdoing vis-à-vis the service return form.  To revisit, Hooper testified he did

not believe Midland "should have known" that he did not receive service of process.

(Hooper Dep. at 78 11–12).  Therefore, Hooper conceded Midland did not possess

constructive knowledge he failed to receive service of process.  Furthermore, Hooper

does not argue Midland actually knew he did not receive service of process, and the

record contains no evidence otherwise.  In turn, Hooper does not contend Midland

itself falsified the service return form or enlisted another to do so, and again, the record

contains no evidence otherwise.  Hooper thus does not contend Midland effectuated

the alleged forgery, and, consequently, forecloses any recourse against Midland via a

direct liability theory.[25]  The court will therefore assess whether Hooper's claim stands

viable pursuant to a theory of vicarious liability.

---

[25] Hooper highlights that prior to testifying he did not believe Midland possessed constructive knowledge he did not receive service of process, he stated he did not know "what [Midland] knew or what [it] did not know." (Hooper Dep. at 78, ll. 9–10).  Yet, as recounted previously, defense counsel then repeated the question, "Do you [Hooper] believe [Midland] should have known . . . that you didn't actually get served?" (*Id.* at 78, ll. 11–14).  Hooper then clarified, "Do I believe [Midland] should have known?", before clearly responding, "No." (*Id.* at 78, ll. 16–19).  Hooper thus testified unequivocally that he did not believe Midland possessed constructive knowledge he did not receive service of process when it filed the service return form, and, therewith, implicitly disclaimed that Midland itself effectuated the alleged forgery given the absence of evidence Midland knew of the alleged transgression.  And in any event, Hooper's testimony that he did not know "what [Midland] knew or what [it] did not know" does not reasonably portray Midland knew of the alleged forgery or itself effectuated the alleged forgery, nor does the record contain any other evidence reasonably depicting the same.  To the contrary, the evidence reasonably depicts Midland did not maintain any involvement in the pleadings phase of the collection action, as Midland "rel[ied] on Moxley" to manage the lawsuit and evaluate the service return form.  (Richmond Dep. at 96, ll. 3–8; 139, ll. 2–7).

As referenced previously, a debt collector may incur vicarious liability for its agent's violations of the FDCPA.  *See Janetos*, 825 F.3d at 325; *Oberther v. Midland Credit Mgmt.*, 45 S. Supp. 3d 125, 130 (D. Mass. (2014) ("[U]nder 'agency principles' a principal entity which meets the definition of a 'debt collector' may be held vicariously liable for the acts of its 'authorized or apparent agent under the FDCPA.'") (quoting *Alger v. Ganick, O'Brien & Sarin*, 35 F. Supp. 2d 148, 153 (D. Mass. 1999)).  However, an agent may not subject a principal to vicarious liability unless both parties constitute debt collectors.[26]  *See Freeman v. ABC Legal Servs., Inc.*, 827 F. Supp. 2d 1065, 1076 (N.D. Cal. 2011) ("[V]icarious liability may obtain where both [the principal and agent] are debt collectors."); *see also Matos v. Lexington Place Condo. Ass'n*, No. 6:18-cv-1105-Orl-31DCI, 2019 U.S. Dist. LEXIS 32908, at *4 (M.D. Fla. Mar. 1, 2019) ("[E]ntities that themselves qualify as debt collectors can be held vicariously liable for the actions of other debt collectors under the FDCPA."); *Thompson*, 2015 U.S. Dist. LEXIS 41639, at *66–72 (N.D. Ala. Mar. 31, 2015) (because both entities constituted debt collectors, the plaintiff could pursue a theory of vicarious liability against the assignee for the collection company's alleged FDCPA violations); *Caron v. Maxwell*, 48 F. Supp. 2d 932, 936 (D. Ariz. 1999) ("Although the FDCPA is silent on the issue of vicarious liability, courts

---

[26]  That is, "[t]he FDCPA applies only to debt collectors, and only when their conduct is undertaken 'in connection with the collection of any debt.'"  1 FAIR DEBT COLLECTION PRACTICES § 1.03[01].  Courts applying vicarious liability principles thus recognize that "it is fair and consistent with the [FDCPA] to require a debt collector who is independently obliged to comply with the Act to monitor the actions of *those it enlists to collect debts* on its behalf."  *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325 (7th Cir. 2016) (emphasis added).

have held that the client of an attorney working as a 'debt collector' as defined in § 1692a(6) of the FDCPA is only liable for his attorney's violations if both the attorney and the client are debt collectors within the meaning of the statute.") (citing *First Interstate Bank*, 924 P.2d at 1202; *Fox v. Citicorp Servs., Inc.*, 15 F.3d 1507, 1516 (9th Cir. 1994) (holding a client vicariously liable for the debt collector attorney's misconduct where the *client itself* was a debt collector within the meaning of the statute)); *First Interstate Bank, N.A. v. Soucie*, 924 P.2d 1200, 1202 (Colo. App. 1996) ("[V]icarious liability under the FDCPA will be imposed for an attorney's violations of the FDCPA if both the attorney and the client are debt collectors as defined in § 1692a(6).").

Therefore, a plaintiff may press an FDCPA claim pursuant to a theory of vicarious liability only if the pertinent parties both constitute "debt collectors" and they enjoy an agency relationship.  In this case, the record portrays the existence of two potential agents who could subject Midland[27] to vicarious liability pursuant to the foregoing principles:  Moxley and VanSlam.  However, for converse but equally essential reasons, the evidence fails to permit a reasonable determination that either may expose Midland to vicarious liability.

As for Moxley, although the evidence reasonably casts it as an agent who may subject Midland to vicarious liability, the evidence fails to portray it effected the alleged

---

[27] As referenced previously, the parties do no dispute Midland constitutes a "debt collector" pursuant to § 1692a(6).  Thus, the relevant inquiry concerns whether Moxley and VanSlam constitute "debt collectors" who operated as Midland's agents.

fabrication.   First, the evidence reasonably portrays Moxley constitutes a "debt collector" pursuant to § 1692a(6), as Moxley constitutes one of several collection law firms Midland regularly retains, and Midland "has been sending accounts to [Moxley] for collection or lawsuits . . . [for] a few years." (Richmond Dep. at 56, ll. 6–9). Further, Moxley "attempted to collect on [Hooper's account] short of filing [the state court collection lawsuit]."    (Doc. 38-5  ¶  7).    Reasonably, therefore, Moxley "uses . . . instrumentalit[ies] of interstate commerce or the mails in a[] business the principal purpose of which is the collection of any debts, or [it] regularly collects or attempts to collect . . . debts owed or due or asserted to be owed or due another."  § 1692a(6); *see Heintz v. Jenkins*, 514 U.S. 291, 294 (1995) ("[A] lawyer who regularly tries to obtain payment of consumer debts through legal proceedings is a lawyer who regularly 'attempts' to 'collect' those consumer debts" pursuant to § 1692a(6).).

Further, Moxley's attorney-client relationship with Midland reasonably portrays that it served as Midland's agent.  *See Batton v. City of Jasper*, 354 F. App'x 400, 401 (11th Cir. 2009) ("An attorney employed to represent a litigant in the prosecution or defense of a suit is a special agent of his client . . . .") (quoting *Benitez v. Beck*, 872 So. 2d 844, 847 (Ala. Civ. App. 2003)); *BJCC, LLC v. Lefevre*, No. 8:09-CV-551-T-17EAJ, 2012 U.S. Dist. LEXIS 110334, at *88 (M.D. Fla. July 27, 2012) ("[A]n attorney serves as agent for his client; the attorney's acts are the acts of the principal, the client."). Thus, because the record reasonably portrays Moxley constitutes a debt collector who operated as Midland's agent, Midland may incur vicarious liability if Moxley effected the alleged

falsification.  *See Abraham v. Midland Funding*, No. 1:14-CV-03485-RWS-JFK, 2016 U.S. Dist. LEXIS 199465, at *8 (N.D. Ga. Jan. 21, 2016) ("Debt collector clients can be held vicariously liable for their lawyers' violations of the FDCPA."); *Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 508, 516 (S.D.N.Y. 2013) ("[V]icarious liability may attach in the context of an attorney-client relationship where both the attorney and its client constitute 'debt collectors' under the FDCPA."); *Martsolf v. JBC Legal Grp., P.C.*, No. 1:04-CV-1346 (CLASS ACTION/CONSOLIDATED), 2008 U.S. Dist. LEXIS 6876, at *42–43 (M.D. Pa. Jan. 30, 2008) ("FDCPA liability levied upon an attorney debt collector may be equally imposed upon the attorney's debt collector client."); *Oei v. N Star Cap. Acquisitions, LLC*, 486 F. Supp. 2d 1089, 1095 (C.D. Cal. 2006) ("[C]ourts routinely hold debt collectors vicariously liable under the FDCPA for the conduct of their attorneys in collecting debts on their behalf."); *see also Fox*, 15 F.3d at 1516 (Based upon the 1986 amendments to the FDCPA, "Congress intended the actions of an attorney to be imputed to the [debt collector] client on whose behalf they are taken").

However, the record lacks any evidence reasonably depicting Moxley engaged in wrongful conduct.  To be sure, as discussed previously, when asked whether he "ha[d] any reason to believe that Midland or anyone on behalf of Midland" falsified the form, Hooper responded, "Yes. . . . I know how easy that would be to do.  I'm a graphic artist."  (Hooper Dep. at 76, l. 21 – 77, l. 8).  But Hooper's belief that falsifying the service return form *would be* "easy" does not permit a reasonable inference that Moxley indeed committed such transgression.  Similarly, Hooper's testimony that he "ha[d] no

idea" who may have falsified the service return form does not engender a reasonable inference of any culpability on behalf of Moxley. As discussed previously, Moxley averred it believed Hooper received service of process based upon the executed service return form. (Doc. 38-5 at 6). Hooper does not present any evidence reasonably depicting otherwise, nor does he dispute Moxley's representation.  (Hooper Dep. at 75, ll. 11–16).  A reasonable jury, therefore, may not conclude Moxley effected the alleged falsification in violation of § 1692e(10), and, concomitantly, it may not conclude Moxley exposed Midland to vicarious liability.

Conversely, as for VanSlam, the evidence fails to depict it constitutes an agent who may subject Midland to vicarious liability, even if the evidence supports a reasonable inference it falsified the service return form.  As elaborated previously, VanSlambrouck stated she "personally served the court summons and the Complaint filed by [Midland] against Colby Hooper . . . upon Mr. Hooper at his residence," and averred Hooper "sign[ed] for his receipt of service."  (Doc. 38-8 ¶¶ 3, 4).  Hooper, of course, disputes he received service of process, and, in opposing Midland's Motion, specifically disputed the representations in VanSlambrouck's Affidavit.  (Doc. 43 at 7). By disputing VanSlambrouck's account, Hooper reasonably implies that she, or another VanSlam employee, falsified the service return form, and, therewith, sustains a genuine issue of material fact whether VanSlam effected the alleged fabrication.

Nevertheless, Hooper cannot establish Midland's vicarious liability for VanSlam's alleged forgery because VanSlam does not constitute a "debt collector"

pursuant to § 1692a(6).  To recount, an individual or entity acting on behalf of a "debt collector" must itself constitute a "debt collector" to expose the latter to vicarious liability.  Crucially, however, § 1692a(6) expressly exempts process servers from the definition of a "debt collector."  Pursuant to § 1692a(6)(D), "[t]he term ["debt collector"] does not include . . . any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt." § 1692a(6)(D).  As referenced previously, VanSlam characterizes itself as "a professional process service company," and Hooper does not present any evidence to the contrary. (Doc. 38-7 ¶ 2).  Reasonably, therefore, VanSlam falls within the § 1692a(6)(D) process server exemption, and, concomitantly, does not constitute a "debt collector."  In turn, because VanSlam does not constitute a "debt collector" pursuant to the FDCPA, it cannot expose Midland to vicarious liability for its alleged falsification of the service return form.  *See Sharp v. Premiere Credit of N. Am., LLC*, No. 3:16-CV-849-J-39PDB, 2017 U.S. Dist. LEXIS 223716, at *32 (M.D. Fla. Jan. 30, 2017) (The plaintiff could not maintain an FDCPA claim pursuant to a vicarious liability theory because she failed to plausibly allege the agent constituted a debt collector, and "[the alleged principal] cannot be vicariously liable as a debt collector if its purported agent is not a debt collector.").

To be sure, some courts have recognized that "where a process server goes beyond being a messenger while serving process or engages in prohibited harassing or abusive conduct to force the consumer to repay the debt, the process server is a debt collector and is not exempt under [§ 1692a(6)(D)]." *McNall v. Credit Bureau*, 689 F. Supp.

2d 1265, 1278 (D. Or. 2010), *accord Convy v. Litow & Pech, P.C.*, No. 4:12-cv-2180 SNLJ, 2013 U.S. Dist. LEXIS 36583, at *11–12 (E.D. Mo. Mar. 18, 2013); *Freeman*, 827 F. Supp. 2d at 1072; *Spiegel v. Jud. Att'y Servs.*, No. 09 C 7163, 2010 U.S. Dist. LEXIS 128237, at *2–4 (N.D. Ill. Dec. 3, 2010); *Sykes v. Mel Harris & Assocs., LLC*, 757 F. Supp. 2d 413, 423 (S.D.N.Y. 2010); *Andrews v. S. Coast Legal Servs.*, 582 F. Supp. 2d 82, 88 (D. Mass. 2008); *Flamm v. Sarner & Assocs., P.C.*, No. 02-4302, 2002 U.S. Dist. LEXIS 22255, at *16–18 (E.D. Pa. Nov. 6, 2002). In such circumstances, courts reason, the process server "steps beyond the bounds of the official duties inherent in serving process and takes on a secondary role of 'debt collector' as defined within the [FDCPA]." *Flamm*, 2002 U.S. Dist. LEXIS 22255, at *17. However, no court in the Eleventh Circuit has considered or adopted this rule, and Hooper does not petition for its application to VanSlam.

In any event, even if VanSlam's alleged falsification stripped it of the § 1692a(6) process server exemption and accorded it "debt collector" status, the record nevertheless fails to portray it enjoyed an agency relationship with Midland that could subject Midland to vicarious liability. An agency relationship may arise when "the alleged principal reserve[s] a right of control over the manner of the alleged agent's performance." *Wood v. Shell Oil Co.*, 495 So. 2d 1034, 1036 (Ala. 1986) (citing *Williams v. Tenn. River Pulp & Paper Co.*, 442 So. 2d 20 (Ala. 1983)); *accord Lincoln Log Home Enters.*

*v. Autrey*, 836 So. 2d 804, 806 (Ala. 2002);[28] *see* RESTATEMENT (THIRD) OF AGENCY § 1.01 ("The power to give interim instructions distinguishes principals in agency relationships from those who contract to receive services provided by persons who are not agents."). "The retained right to supervise the alleged agent to determine if that person conforms to the performance required by a contract with the asserted principal does not, itself, establish control." *Wood*, 495 So. 2d at 1036.

Here, the record does not reasonably depict Midland retained the right to control the manner of VanSlam's process serving. As recounted previously, MCM's Firm Manual sets forth various rules and procedures collection firms must observe in engaging private process servers, including a mandate that all firms "ensure that process

---

[28] Pursuant to federal common law standards, "[s]tate law is called on as applicable where it is necessary to fill federal voids and where state law supplements gaps in the federal law." *Huson v. Chevron Oil Co.*, 430 F.2d 27, 31 (5th Cir. 1970); *see Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all Fifth Circuit decisions decided prior to October 1, 1981). The text of the FDCPA, which lacks any express provisions vis-à-vis vicarious liability, likewise lacks any criteria for assessing the existence of an agency relationship between debt collectors. The court thus applies federal common law, and, therewith, draws upon Alabama law, to determine whether the evidence reasonably depicts the existence of an agency relationship between Midland and VanSlam. *See Kamen v. Kemper Fin. Servs.*, 500 U.S. 90, 98 (1991) ("[T]o fill the interstices of federal remedial schemes . . . [f]ederal courts should 'incorporate state law as the federal rule of decision,' unless 'application of the particular state law in question would frustrate specific objectives of the federal programs.'") (alterations omitted) (quoting *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 728–29, 739–40 (1979)); *Huy Thanh Vo v. Nelson & Kennard*, 931 F. Supp. 2d 1080, 1088 n.9 (E.D. Cal. 2013) ("Federal statutes creating tort liability [such as the FDCPA] have traditionally required the development of federal common law to fill in the interstices of the statute.") (alteration in original) (citation omitted); *see also Freedman v. magicJack VocalTec Ltd.*, 963 F.3d 1125, 1132 (11th Cir. 2020) ("[W]hen a federal court fills gaps in a federal statute with state law, the 'state law [is] . . . incorporated into federal common law.'") (second and third alterations in original) (quoting *Kamen*, 500 U.S. at 98); *Harrison v. Digital Health Plan*, 183 F.3d 1235, 1238–39 (11th Cir. 1999) ("When a federal court borrows [a rule] from state law for use in implementing a federal law that does not possess [such a rule], the court is nonetheless applying federal law. For in borrowing the state [rule] . . . , the federal court is 'closing the gap' left by Congress in order to fashion a body of federal common law to supplement the federal statutory cause of action.").

servers . . . prepare and file accurate proofs of service," and immediately notify [a manager] and . . . assist in taking any necessary remedial action" upon learning of any alleged falsity. (Doc. 38-15 at 7). To the extent these provisions reasonably portray Midland reserved the right to control Moxley's retention of private process servers, they do not depict Midland reserved the right to control the manner in which VanSlam effectuated service of process. In short, the record does not contain any evidence engendering a reasonable inference that Midland enjoyed a right to control VanSlam's process serving methods or practices. Accordingly, a reasonable jury may not conclude VanSlam served as an agent who may subject Midland to vicarious liability, even if it could conclude VanSlam constitutes a "debt collector." *See Convy*, 2013 U.S. Dist. LEXIS 36583, at *11–14 (the plaintiff failed to plausibly allege the process server constituted the defendant's agent because the allegations did not portray the defendant controlled the details of the process server's performance) (applying analogous principles of Missouri agency law); *Scally v. Hilco Receivables, LLC*, 392 F. Supp. 2d 1036, 1040 (N.D. Ill. 2005) (the plaintiff failed to establish the debt collector constituted the defendant's agent absent any facts portraying the defendant controlled the debt collector's interactions with debtors) (applying analogous principles of the Restatement (Third) of Agency); *c.f. Long v. Nationwide Legal File & Serve, Inc.*, No. 12-CV-03578-LHK, 2013 U.S. Dist. LEXIS 132971, at *25–29 (N.D. Cal. Sept. 17, 2013) (The plaintiffs sustained a genuine issue of material fact whether the process server constituted the defendant's agent based upon evidence the defendant "assigned work

based on 'reliability, accuracy of information, and timeliness' of the . . . performance," issued mandatory guidelines to the process server, and required the process server to attempt service seven times before ceasing performance.) (citation omitted) (applying analogous principles of California agency law); *Freeman*, 827 F. Supp. 2d at 1076 (the plaintiff plausibly alleged the defendant exercised sufficient control over the process server to incur vicarious liability for the alleged false proof of service based upon allegations the defendant assigned tasks and managed the process server's performance).  A reasonable jury, therefore, may not conclude Hooper can sustain his § 1692e(10) claim against Midland pursuant to a vicarious liability theory.

In essence, this case corresponds closely to the summary judgment principles espoused in *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187 (5th Cir. 1991).  In *Duplantis*, plaintiff Duplantis worked on an oil drilling right deployed by his employer, Grace Offshore Company, atop a platform owned by Shell Offshore, Inc.  *Id.* at 189. Duplantis sustained injuries when he slipped on a piece of two-by-four wood covered with grease, and he and his spouse sued Shell Offshore for negligence.  *Id.*

The Fifth Circuit upheld summary judgment for Shell, finding that "none of the affidavits or deposition testimony submitted indicates that Shell Offshore owned the board in question or placed it in area [sic] where the plaintiff allegedly was injured . . . ." *Id.* at 190 (alteration in original).  As the court discerned, "if the moving party will not bear the burden of proof at trial, ever since if not before *Celotex*, the moving party need not produce evidence negating the existence of a material fact, but need only point out

the absence of evidence supporting the nonmoving party's case." *Id.* (citations and internal quotation marks and alterations omitted).  The court further held that Shell did not maintain operational control over Grace Offshore, and thus, Shell did not bear vicarious liability over Grace Offshore's acts as an independent contractor.  *Id.* at 192–93.

The analysis in *Duplantis* parallels the findings in this case.  Midland established the absence of any evidence that it signed Hooper's name on the return of process form. Furthermore, the evidence does not establish that VanSlam, an independent contractor, constituted an agent of Midland (or even Moxley, for that matter). Therefore, Hooper failed to introduce any evidence demonstrating that a reasonable juror may hold Midland liable for the alleged deceptive conduct at issue.

## CONCLUSION

Based upon the foregoing analysis, the court **GRANTS** Midland's Motion for Summary Judgment; **DENIES** Hooper's Motion for Partial Summary Judgment; and **DISMISSES** this action with prejudice.  The court further **DENIES AS MOOT** Hooper's Motion to Compel Discovery and Motion for Sanctions.  The court will enter a separate final judgment in accordance with this Memorandum Opinion.

**DONE** and **ORDERED** this 30th day of July, 2021.

H. Johnson, Jr.

_____
HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE